**Isaac ADAMS, Appellant,**

v.

**Albert Michael FOSTER et al.,
Respondents.**

No. 55082.

Supreme Court of Missouri,
Division No. 1.

May 10, 1971.

him to two residential properties, one on Greer Avenue and one on Enright Avenue, in St. Louis, Missouri. He alleged: that he and Gladys Adams, a/k/a Gladys English Adams, a/k/a Gladys English, a/k/a Gladys D. Carter, for a time prior to her death on September 10, 1967, openly and publicly lived together as husband and wife "although a legal ceremony of marriage was not consummated" between them; that they were in actual and exclusive possession of the two properties "as joint tenants with the right of survivorship, pursuant to the agreement and understanding" between them; that Gladys was the "title owner" of the real estate; that they executed a first mortgage note for purposes of refinancing outstanding encumbrances; that they executed a property improvement note and a deed of trust on the property to secure same; that plaintiff managed, controlled and operated the properties for purposes of rentals and advanced sums of his own for improvement and repair; that Gladys died intestate September 10, 1967, survived by her son by a prior marriage, defendant Albert Michael Foster; that defendants Postal Plaza Savings and Loan Association and Mercantile Mortgage Company have interests in the real estate by virtue of deeds of trust executed for their benefit. Plaintiff prayed he be declared the owner of the real estate to the exclusion of all defendants except the deed of trust beneficiaries to the extent of any unpaid balance of their interest.

The mortgagee defendants answered setting up their interests as holders of unpaid secured notes. Albert Foster answered in his own behalf and on behalf of his minor children. He admitted he was the sole surviving child of Gladys, and asserted that plaintiff and his mother were never married and that no estate of the entirety or joint tenancy with right of survivorship was ever created between plaintiff and Gladys with respect to the real estate in issue. He prayed that plaintiff's petition be dismissed, that his entitlement to the property as sole heir be recognized subject

---

Ackerman, Schiller & Schwartz, Paxton H. Ackerman, Clayton, Attorneys for plaintiff-appellant.

Stanley E. Goldstein, Samuel Raban, St. Louis, Attorneys for respondents.

HIGGINS, Commissioner.

Appeal from adverse judgment in action to quiet title to real estate.

Isaac Adams petitioned, pursuant to Section 527.150, V.A.M.S., to quiet title in

only to the liens created by the deeds of trust.

Upon conclusion of plaintiff's case the court sustained defendants' motion for a directed verdict on grounds: (1) that there was no evidence to show that plaintiff and Gladys were married or were in fact husband and wife; (2) that there was no evidence to show a contract between plaintiff and deceased to own the property jointly with right of survivorship; and (3) that there was no evidence to show any title to the properties in plaintiff; and the court decreed that defendant Albert Michael Foster, son of Gladys, be the sole owner in fee simple of the real estate to the exclusion of plaintiff and all other defendants except the defendant mortgagees to the extent of the unpaid balance of their secured notes.

Appellant asserts that two people not married to each other may hold real estate as joint tenants with right of survivorship; and contends that if the court had not erred in excluding some of his evidence, such evidence, together with that admitted, would show the alleged agreement and intention between plaintiff and Gladys to hold subject real estate as joint tenants with right of survivorship.

■ As recognized by appellant, review of this case is "upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The appellate court shall consider any evidence which was rejected by the trial court and duly preserved for the appeal when the appellate court believes such evidence to be admissible." Civil Rule 73.01(d), V.A.M.R.; Volkerding v. Brooks, Mo., 359 S.W.2d 736, 738 [1]. See also Community Land Corp. v. Stuenkel, Mo., 436 S.W.2d 11, 16 [2]; Wallach v. Joseph, Mo., 420 S.W.2d 289, 295 [1]; St. Louis Southwestern Ry Co. v. Meyer, 364 Mo. 1057, 272 S.W.2d 249, 254.

Isaac Adams, 62 years of age at trial, went to work in 1954 for Skinner & Kennedy Stationery Company, by whom he is presently employed. In March, 1954, he met Gladys, age 51, and, after a brief courtship, moved into her Greer Avenue property. They never married but resided together as husband and wife until her death September 10, 1967.

In April, 1956, Gladys received notice by way of legal publication, Exhibit 3-A, that her Greer Avenue property was to be sold at a foreclosure sale for default in a note secured by deed of trust executed by Gladys English and Simon English, her husband. Isaac accompanied Gladys to Sachar Realty Company where arrangements were made for refinancing this indebtedness. "When he talked to us he told her he wouldn't go on that—in her name alone. Who is this? And she said, 'This is my husband.' 'Okay,' he says, 'if he signs then we can do some business.' That is when I first started putting my name on things." Similar requests were made of Isaac with respect to other loan negotiations. On October 3, 1958, two notes with accompanying deeds of trust, Exhibits 4, 5, 6, and 7, were executed. The notes were signed, "Gladys English Adams" and "Isaac Adams," and obligated them jointly and severally as principals. The deeds of trust were also signed "Gladys English Adams" and "Isaac Adams," with acknowledgment "Gladys English Adams formerly Gladys English, and Isaac Adams, her husband."

These obligations were refinanced at Postal Plaza Savings and Loan Association August 1, 1961, upon execution of another note and accompanying deed of trust, Exhibits 2-A and 2-B. The signature acknowledgment and representation were the same as in Exhibits 4, 5, 6, and 7. At this time, St. Louis Title and Abstract Company certified, Exhibit 2-C, that title to the Greer Avenue property was in "Gladys English, widow of Simon English, now the wife of Isaac Adams." Exhibit 2-D showed the payments made on this

obligation, and Exhibit 2–E was an accompanying borrower's insurance agreement executed by Gladys and Isaac as mortgagors.

On October 13, 1966, Gladys and Isaac executed a property improvement note, Exhibit 1–E, payable to Better Homes Construction Company, endorsed to Mercantile Mortgage Company, and an accompanying deed of trust, Exhibit 1–F. This obligation was for improvement of the Enright Avenue property, and the signatures, acknowledgment, and representation were again as before. In this connection, Gladys and Isaac also executed additional documents: Exhibit 1–A was a credit statement showing Isaac's employment, that the Enright property was in the name of Isaac and Gladys Adams, and that rental properties grossed $210 per month; Exhibit 1–B was the sales contract for the improvements to be made by Better Homes, executed by Gladys and Isaac as owners; Exhibit 1–C was the work completion certificate signed by Gladys and Isaac; and Exhibit 1–D was the certificate of American Title Company that title to the Enright Avenue property was in "Gladys Carter now Gladys English Adams, wife of Isaac Adams," and Exhibit 1–G was the payment record showing current status of this obligation.

Exhibits 8 and 9 are yet another note and accompanying deed of trust affecting the Enright Avenue property, dated January 19, 1961, involving Sachar Realty Company and with Gladys and Isaac signing, acknowledging, and representing as before.

Plaintiff identified several other exhibits representative of expenditures made on subject properties during the life of Gladys: 10–A and 10–B, furnace and water heater estimates made by Sears-Roebuck and Co. for Gladys and Isaac Adams, customers, at 4627 Greer; 11–A, furnace proposal of Missouri Heating Co. for Isaac and Gladys Adams as "owners"; 11–B, customer experience record of Missouri Heating Co. showing Isaac Adams to have requested an adjustment on furnace described in 11–A; 12, duplicate of 1–B; 13–D, estimate of Sears-Roebuck and Co. of August 12, 1967, for furnace work at 4627 Greer showing Isaac Adams as "customer"; 13–A, B, and C, statements of account and receipt of payment of 13–D from Isaac Adams October 2, 1967; 14–A, B, and C, statement of October 20, 1966, security agreement and proposal of Central Hardware Company for furnace at 4627 Greer, showing Isaac Adams as "customer"; 15–A, B, and C, payment receipts and December 6, 1966, proposal of Central Hardware for furnace for Isaac Adams; 16–A, B, and C, note, loan statement, and certificate of insurance of Isaac and Gladys Adams with Dial Finance Company; 17, sales contract with United Home Owners' Supply for screens signed by Isaac and Gladys as "owner"; 18, service order to Sears by Isaac Adams on screens; 19, ten purchases of merchandise by Gladys from Melcher-Schene Lumber Co.; 20–A and B, invoices and receipt to I. Adams for furnace burner cleanup; 21, delivery ticket on brick sold to "Adams"; 22, delivery ticket on doors sold to I. Adams; 23, toilet repair ticket for "H. Adams"; 24, toilet parts sold to "I. Adams"; 25, group insurance certificate on Isaac Adams, beneficiary "Gladys Adams."

In addition to the foregoing matters, Isaac Adams testified that Gladys worked as a domestic until some time in 1966 when her employer died leaving her a bequest of some $14,000, over $10,000 of which was in a joint savings account at her death and which survived to Isaac. By way of offer of proof, counsel stated, "we are not suggesting that these key words 'joint tenants and right of survivorship' were ever used between plaintiff and deceased, but * * * if permitted * * * he would testify his course of conduct and conversation with Gladys led to the inescapable conclusion what she desired in her lifetime was that in the event of her death Isaac would become the owner of the properties at Greer and Enright, and that is

the agreement and understanding alleged in the petition."

Following the death of Gladys September 10, 1967, Isaac was married to another woman in a regular ceremony. According to Isaac rentals from the properties "never made a profit. * * * the real estate company keeps all the money, because at one time we got behind * * *. At one time Mr. Sachar collected them .* * * then Samuel E. Fine * * * collected the rent," and Mr. Fine applied the rents against the mortgages. The same was true of insurance and taxes.

Blanche Tucker, age 62, had lived at 4629A Greer since October, 1965. She had known Gladys as "just a casual friend" since 1955. Counsel offered to prove by Mrs. Tucker "to the effect that Gladys Adams, during her lifetime, on numerous occasions stated to this witness that it was her desire that 'Baby' * * * was to own with her * * * and whichever one of them passed on first, the survivor was to own the property * * * that for all intents and purposes Gladys Adams had evidenced to this witness * * * her affection and consideration for Isaac as her husband and it was her understanding, her meaning Gladys Adams, that this property that is involved in this lawsuit be owned jointly between the parties."

Plaintiff's petition acknowledges that Isaac and Gladys were never lawfully married, and appellant's brief concedes that state of affairs as well as title to subject real estate in Gladys, now deceased.

Much of appellant's brief is devoted to alleged errors with respect to the trial court's exclusion of Exhibits 1–A, B, C, 3–A, 4, 5, 6, 7, 8, 9, 10–A, B, 11–A, B, 12, 13–A, B, C, D, 14–A, B, C, 15–A, B, C, 17, 18, 19, 20–A, B, 21, 22, 23, 24, 25, and refusal of the described offers of proof. In this review it is not necessary to discuss the arguments and authorities advanced in support. All of plaintiff's evidence has been stated and considered without regard for the accuracy of any such exclusions or refusals because when reviewed in its entirety, the evidence does not dictate conclusions contrary to those of the trial court.

With respect to appellant's assertion on this appeal, there can be no doubt under the pleadings, evidence, and concessions that plaintiff and Gladys were never lawfully married. As a consequence, plaintiff could not enjoy the right of survivorship as an incident of a tenancy by the entireties because such tenancy and its survivorship characteristic can exist only between husband and wife. Peer v. Ashauer, Mo.App., 102 S.W.2d 764, tr. Sup., 92 S.W.2d 154, cert. quashed State ex rel. Ashauer v. Hostetter, 344 Mo. 665, 127 S.W.2d 697. Nor can there be any doubt under the pleadings, evidence, and concessions that plaintiff had no title in the real estate in issue.

It is true, as asserted by appellant, that two people not married to each other may hold real estate with right of survivorship, e. g., where it appears the co-owners have agreed among themselves that the survivor take the fee, Creek v. Union Nat. Bank in Kansas City, Mo., 266 S.W.2d 737, 752[15]; or that the grant expressly declare or by plain implication manifest the intention of the parties to create an estate with the incidence of survivorship, Powers v. Buckowitz, Mo., 347 S.W.2d 174, 175[2, 3]; Hunter v. Hunter, Mo., 320 S.W.2d 529. See also Section 442.450, V.A.M.S., providing that "Every interest in real estate granted or devised to two or more persons, other than * * * husband and wife, shall be a tenancy in common, unless expressly declared * * * to be in joint tenancy."

Plaintiff alleged he and Gladys were "joint tenants with the right of survivorship, pursuant to the agreement and understanding" between them; and appellant asserts "the purpose of plaintiff's action is to seek the enforcement of the 'agreement and understanding.'"

The difficulty in appellant's position is that the evidence, considered in its en-

tirety, does not show any contract existed between plaintiff and Gladys to own subject properties jointly with the right of survivorship. None of the documents contained any such agreement, either by expression or implication. Plaintiff executed notes and deeds of trust for the purposes of obtaining financing upon being introduced as the husband of Gladys and at the instance of the lending agents. Title to the real estate so affected was in Gladys only at all times. The various purchase and service orders recited only that Isaac was an "owner" or "customer" and they were in no sense acts of Gladys, the true owner, indicative of any intention with respect to joint ownership and survival. Several such purchase orders were executed by Gladys alone or showed charges to her account, and no implication such as that alleged by plaintiff could arise from them. Such evidence showed, as pleaded and asserted by plaintiff, that Isaac and Gladys held themselves out as husband and wife and that they had "a mutual meeting of the minds" on many things but, as demonstrated, it does not show any agreement or intention to create an estate in real estate with the incidence of survivorship.

Neither do the offers of proof with respect to testimony from Isaac and Blanche Tucker show the alleged agreement and understanding. They are hardly cogent and convincing in any respect; admittedly, "joint tenants and right of survivorship" were never used between Isaac and Gladys, and the offered testimony is as consistent with unexecuted desires of a testamentary nature as they are of any agreement to own real estate in joint tenancy.

Appellant emphasizes also the joint savings account to which plaintiff survived to the enjoyment of some $10,000, and suggests it "bears out the full extent of the jointness of the interests in the property of these two people." This evidence is also subject to more than the sole conclusion urged by appellant. It shows also that the parties knew how to create a joint interest with right of survivorship and did create such a tenancy of considerable value to Isaac. The proceeds of such account provided a substantial set-off to any obligations incurred by plaintiff for property improvement which are not secured by the liens accorded the lien holders on subject real estate. Cf. Thompson v. St. Louis Union Trust Co., 363 Mo. 667, 253 S.W.2d 116; Niedt v. Ashoff, Mo.App., 193 S.W.2d 348; Sportsman v. Halstead, 347 Mo. 286, 147 S.W.2d 447.

Appellant cites Wallach v. Joseph, supra, 420 S.W.2d l.c. 295–296[7], that "This Court, sitting in equity, de novo, must administer complete justice within the scope of the pleadings and evidence," even though he may have mistaken the specific relief to which he is entitled. He suggests by reference to his authorities that even though his was a petition to quiet title, "various techniques, so to speak," have been employed "to bring about the required relief, e. g., specific performance and resulting trust, to cite but two instances." Irrespective of the name attached to plaintiff's claim for relief, it is founded upon an alleged "agreement and understanding," and it has been demonstrated that the evidence does not prove such allegation. As a consequence, the trial court adjudged the action to have failed regardless of its name, and such judgment does not appear "clearly erroneous."

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., BARDGETT, J., and SEMPLE, Special J., concur.

HOLMAN, J., not sitting.