STATE of Missouri ex rel. Ericka L. WILLIAMS, a minor, by Karen Y. Williams, next friend, Plaintiffs–Appellants,

v.

Ronald E. WILLIAMS, Defendant–Respondent.

No. WD 31086.

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

Michael J. Maloney, Popham, Conway, Sweeny, Fremont & Bundschu, P. C., Kansas City, for defendant-respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

The State appeals from an adverse judgment in an action brought on behalf of Ericka Williams by her next friend and mother, Karen Williams, for a declaration of paternity and child support. The action was brought under § 208.040(5), RSMo 1978.[1] The petition alleged the father of Ericka was Ronald Williams and the court by its judgment found that Ronald was not the father.

On this appeal the State complains of the rejection of certain evidence and of permitting Ronald to reopen his case and contends the judgment is against the weight of the evidence. Affirmed.

Ronald and Karen Williams had been married but were divorced in October, 1975. Karen testified that she was having sexual relations with Ronald in October, November and December, 1976, when Ericka was conceived, to the exclusion of anyone else. Ericka was born on October 14, 1977. An expert on blood types testified that he had performed blood tests on Ericka, Karen and Ronald, and although Ronald was not excluded as the father, based on a mathematical analysis of the blood types, there was an 81.15% possibility that Ronald was the father. The expert stated this was not to be taken as anything more than a "certain hint" of paternity. The expert testified that a possibility or probability of paternity of less than 80% is no help at all in determining paternity. He stated that he preferred a probability of more than 90%, and with 90 to 94% he would consider paternity likely. From 95 to 98% would be considered very likely, 99 to 99.7% would be extremely likely, and 99.8 to 99.9% would practically

Carol A. Coe, Asst. Pros., Atty., Kansas City, for plaintiffs–appellants.

1. The applicability of this section in this proceeding is not challenged and that question is not addressed.

prove paternity. The expert further testified that a paternity index is generally more understandable than a probability of paternity because an 80% probability level sounds extremely high. He said in this case a paternity index showed that there was only one in 4.3 chances that Ronald was the father. He continued by stating: "In other words, if I was to stop five men at random on the street, I would expect one of those five men to be just as likely scientifically to be the father as well." The expert continued that by testing the five men present in the courtroom at the time of his testimony, he would expect one of the five to have a blood type which would give the same results as that given by the blood test performed on Ronald.

The State further introduced the birth certificate of Ericka which listed Ronald as the father. Karen stated that Ronald had acknowledged that he was the father of Ericka and had given the information for the birth certificate in the presence of a nurse at the hospital. Karen further testified Ronald had fed Ericka at the hospital and bought milk, diapers and baby food for her.

Ronald testified and denied having any sexual relations with Karen after their divorce and denied making any admissions that he was the father of Ericka. He stated his visits with Karen in the hospital were connected with another child which was born during their marriage.

After Ronald had apparently called his last witness, but before any formal announcement was made that Ronald was ready to rest, a woman, later identified as Saundra Rollins, appeared at the courtroom door and made some remark which was inaudible to the court reporter. Thereafter Mr. Maloney, Ronald's counsel, asked permission to visit with Saundra and later asked permission to reopen his case to call Saundra as a witness. It developed that Saundra had been subpoenaed by the State but the prosecutor had decided not to call her. Saundra testified that she had been engaged to Ronald after his divorce from Karen, but that engagement had been called off. She testified that she had heard Karen tell Ronald that if he did not hurry up with the child support for the child born to Ronald and Karen during their marriage, she would say that the child she was then carrying was Ronald's and would force him to pay for it also. She also stated that Karen told her that Ronald was not the father of Ericka, the child she was then carrying.

At the conclusion of the evidence the court stated that the burden of proof was the critical issue in the case because there was testimony that Ronald was the father and there was the testimony of Ronald denying the fact. The court found there was not enough evidence to show that Ronald was the father and entered judgment in favor of Ronald.

The State first contends the court erred in failing to admit Karen's diary[2] as evidence of the dates on which she had sexual relations with Ronald. The diary was marked and offered as an exhibit after Karen testified that she could not recall "off hand" the exact dates. Thereupon the

2. Appellate briefs in this court uniformly treat questions of the admissibility or rejection of evidence in a court tried case on the basis of prejudice as in a jury case. However, in a court tried case it is practically impossible to predicate reversible error on the erroneous admission of evidence. *City of Butler v. Kuecker*, 559 S.W.2d 575, 578[4] (Mo.App.1977). In such cases the appellate court considers any evidence it finds to be admissible which is properly preserved for the appeal. *Adams v. Foster*, 466 S.W.2d 706, 708[1] (Mo.1971). Evidence admitted by the trial court but found to be inadmissible by this court is disregarded. *Fix v. Fix Material Co., Inc.*, 538 S.W.2d 351, 354[1–4] (Mo.App.1976). While the question of the admission or rejection of evidence in a court tried case may be challenged on appeal, the ultimate inquiry is the effect which the claimed error has on the review which this court makes under *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc. 1976). Thus a point on appeal in a court tried case which states only error in the admission or rejection of evidence without stating how or why such error affects the validity of the judgment under *Murphy* is not sufficient. The point must state the erroneous ruling and the reason such ruling was wrong, and must state in what way the ruling affects the judgment under *Murphy*.

State had Karen identify her diary and had it marked and offered into evidence. Ronald objected and the court sustained the objection. In the offer of proof the State said the witness would testify, based on the diary, to the dates on which she had relations with Ronald, and would show that she had stopped taking the pill. In its second point, the State contends the court erred in failing to allow Karen to refresh her memory by use of the diary.

■ The applicable rule is set out in *Watson v. Merideth Development Company*, 410 S.W.2d 338 (Mo.App.1966). It is there stated

"that a witness who does not recall or is uncertain about matters concerning which he is called upon to testify may, under certain circumstances and conditions, be permitted to refresh his memory by referring to a memorandum or writing." p. 341[1–3].

Whether to allow a witness to refresh his memory rests in the sound discretion of the court. As pointed out in *Watson*, a prerequisite for the refreshing of a witness's recollection would be his statement that he needed the aid of a writing to recall the facts to his mind. *Watson* further points out at 341[4–5] that there are two situations which arise in connection with a witness refreshing his recollection. The first is when the witness can refer to a writing and then testify independent thereof so that his recollection is refreshed and he is able to testify from his own recollection. The second situation is when a witness is unable to testify independent of the writing even after he has looked at it but can testify only by reading from the writing and not from his independent recollection, even after it is refreshed. Of course, in the first situation the writing is of relative unimportance because the witness is not testifying from the writing but is in fact testifying from his own recollection although after it has been refreshed. In the second situation, the writing is of extreme importance because the testimony then comes only from the writing and not from the witness's recollection. 98 C.J.S. Witnesses § 358c, p. 88.

The situation at the time the State offered the diary in evidence was the statement by the witness that she was unable to recall "off hand" the dates she had relations with Ronald. Karen never testified as to whether or not she could testify to the dates after refreshing her recollection by referring to the diary.

■ Even if the diary were admissible,[2] a sufficient foundation was not laid for its introduction because there was no showing that the witness could not testify to the dates after she had refreshed her recollection by simply examining the diary. The State at no time, contrary to its assertion on this appeal,[3] requested the court to allow the witness to look at the diary in order to refresh her recollection. Obviously in the absence of any request to the court, the court could not be faulted for a refusal to allow the witness to refer to the diary to refresh her recollection.

■ The State next contends the statements in the birth certificate that Ronald was the father are conclusive and the court was bound by such statements of fact and should have declared Ronald to be the father. Ronald and Karen were not husband and wife at the time Ericka was born and had been divorced for about two years at that time. Under these circumstances the statements in the birth certificate were not prima facie evidence, must less conclusive. Section 193.170, RSMo 1978; *Haley v. Metropolitan Life Insurance Company*, 434 S.W.2d 7, 10[3, 4] (Mo.App.1968).

■ The State next contends the court erred in overruling the State's objection to Ronald reopening his case so that he could

---

2. In *Elliott v. Sheppard*, 179 Mo. 382, 78 S.W. 627, 629 (1904) the court stated that a diary falls within that class of testimony denominated as self serving statements, and would be inadmissible. See also *State v. Coffey*, 8 Wash.2d 504, 112 P.2d 989 (1941).

3. In its brief the State refers to specific lines in the transcript to show that a request was made for Karen to examine the diary to refresh her recollection. The transcript citation is to a statement by Mr. Maloney, attorney for Ronald.

call Saundra Rollins as a witness. Again, contrary to the State's assertion, the record does not show any objection by the State to Ronald calling Saundra as a witness. In fact, the record shows the prosecutor stated that she was not objecting, but just felt it was not the proper procedure for Saundra to be called. Thus, there is nothing preserved for review absent an objection. *City of Butler v. Kuecker*, 559 S.W.2d 575, 577[3] (Mo.App.1977). Further, it is in the discretion of the court to allow a party to reopen his case. *Collins v. Cowger*, 283 S.W.2d 554, 559[1–4] (Mo.1955). No abuse of discretion is shown.

The State further contends the court erred in allowing Saundra to be called as a witness because it denied the State the opportunity to conduct discovery to determine Saundra's testimony. The State made no request for a continuance or an opportunity to make discovery, but more important, Saundra had been subpoenaed by the State and the prosecutor stated that she had in mind what the testimony of the witness would be.

█ The State finally contends the judgment is against the weight of the evidence. As pointed out in the statement of facts, the evidence of the blood test was of practically no value and the remaining evidence was conflicting and the resolution of that conflict necessarily rests in the credibility of the witnesses and the weight to be accorded their testimony. In that situation this court defers to the findings of the trial court. *D__ L__ M__ v. P__ D__ M__*, 548 S.W.2d 237, 239 (Mo.App.1977).

After a review of the evidence and deferring to the opportunity of the trial court to judge the credibility of the witnesses, this court cannot say that the judgment is against the weight of the evidence.

The judgment is affirmed.

All concur.