Steven Michael **RATTEREE**, Appellant,

v.

**Donna Jean WILL, Respondent.**

No. ED 90269.

Missouri Court of Appeals,
Eastern District,
Division One.

June 3, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 15, 2008.

Application for Transfer Denied
Aug. 26, 2008.

Theodore S. Schechter, Anne E. Lageson, Clayton, MO, for appellant.

Robin L. Kaiser, Maia Brodie, Keefe & Brodie, Clayton, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

Steven Ratteree appeals the trial court's decision to allow Donna Will to relocate the couple's child from St. Louis to San Francisco. Because the trial court's judgment is supported by substantial evidence and is not against the weight of the evidence, we affirm.[1]

### Factual and Procedural Background

Prior to this action, Donna Jean Will ("Mother") and Steven Ratteree ("Father") both lived in St. Louis. They shared joint physical and legal custody of their five-year-old son, Grant, per a custody order entered in a December 2005 paternity case. That judgment designated Mother as the residential parent and provided for approximately equal visitation between the two parents. In September 2006, Mother sought court permission to relocate with Grant, citing "an involuntary job transfer" that would require her to move to San Francisco. Father opposed the request, and the court held a trial in April 2007.

Mother worked for Administaff as a mid-market sales representative in its St. Louis office. When Administaff eliminated the mid-market position, the company offered Mother a sales management position in San Francisco because of her experience

---

1. The irrelevant and immaterial matters inserted into Mother's brief were not considered by this Court. However, her statement of facts contained adequate citations to the record. Father's motion to strike is denied.

and success at lower-level positions. The company's Vice President of Sales, Marty Scirratt, testified that no St. Louis positions remained for someone with Mother's qualifications. Although it would be possible for Mother to work for Administaff in St. Louis as a sales representative, said Scirratt, that position would be a demotion for her.

Father countered with the testimony of vocational expert, David Gibson, who, after searching for available St. Louis sales positions, found several opportunities. In fact, Mother had applied to one of those companies, but received no response. Furthermore, Mr. Gibson was not aware that Mother had not completed high school and had only a GED. He was not aware whether these positions would accept someone with that level of education, but he opined that it was her experience that mattered. After hearing this evidence, the court concluded that Mother's job transfer was involuntary and that she must move to San Francisco in order to perform her job duties.

Mother testified that she had located a school, doctor, and activities for Grant similar to those he had in St. Louis. She described the neighborhood in which Grant would be living with Mother and with her fiancé. She also testified that her sister lived in San Francisco. Grant had no other family in San Francisco. Grant's grandparents and great-grandparents lived in St. Louis, along with some of his aunts, uncles, and cousins. Finally, Father's current wife and his two older daughters both lived in St. Louis and had relationships with Grant.

The trial court then addressed Father's relationship with Grant. The court found that from Spring 2005 to October 2006, Father resided at his wife's house. Then Father sporadically stayed in hotels, final-

ly moving into Clayton on the Park. The trial court found that Father's other children did not live with him during that time. The court concluded that Father lacks a stable household and home environment. Further, during 2005, Father exercised less than half his time with Grant. Beginning in January of 2006, which is the same month Mother told Father that she was engaged, he began exercising full visitation. The court also found that Father routinely ate out with Grant, up to two times per day when Grant was with Father. Grant's babysitter, Janice Fainer, also testified that Mother provided the clothes and food for Grant in a bag when she would drop him off, and Father would return Grant with the bag full of dirty clothes. Finally, after hearing much testimony regarding Father's financial status, the court was unable to determine Father's income, if any, and the nature and extent of his business. The court concluded that Father lacked financial responsibility.

Ultimately the court entered a judgment allowing Mother to relocate with Grant and modifying custody and visitation. Father appeals, raising five points: 1) That the trial court erred in finding Mother sought to relocate in good faith; 2) that the trial court erred in finding that relocation was in the child's best interests; 3) that the trial court erred in allowing evidence of Father's prior business dealings; 4) that the parenting plan the trial court entered does not comply with § 452.377.10 [2]; and 5) that the trial court failed to make certain findings of fact in violation of Rule 73.01(c).

### Standard of Review

▇▇▇ We will affirm the judgment of the circuit court unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or is

---

**2.** All statutory references are to RSMo. (2000) unless otherwise indicated.

based upon a misstatement or misapplication of the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Substantial evidence is "competent evidence which, if believed, would have probative force on the issues." *Midstate Oil Co. v. Missouri Com'n on Human Rights,* 679 S.W.2d 842, 846 (Mo. banc 1984) (quoting *Barnes Hosp. v. Missouri Com'n on Human Rights,* 661 S.W.2d 534, 537 (Mo. banc 1983)). We consider all evidence and reasonable inferences therefrom in the light most favorable to the judgment, disregarding contradictory evidence. *Murphy v. Carron,* 536 S.W.2d at 32. "We give greater deference to the trial court in custody matters than other matters. Because the trial court is in the best position to weigh all of the evidence, we will affirm the trial court's custody determination under any reasonable theory." *Bohac v. Akbani,* 29 S.W.3d 407, 411 (Mo.App. E.D.2000) (citations omitted).

■ Regarding Father's third point concerning the trial court's exercise of its discretion in admitting evidence, we rarely reverse based on erroneous admission of evidence in a court-tried case. *Steinbruegge v. Steinbruegge,* 670 S.W.2d 583, 584 (Mo.App. E.D.1984). The ultimate inquiry is the effect of the claimed error on our review under *Murphy v. Carron. State ex rel. Williams v. Williams,* 609 S.W.2d 456, 458 n. 2 (Mo.App. W.D.1980).

### Discussion

#### Mother's Good Faith

■ A parent seeking to relocate with a child has the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child. § 452.377.9. Furthermore, the relocation must comply with the requirements of § 452.377.10. *Stowe v. Spence,* 41 S.W.3d 468, 469 (Mo. banc 2001). The trial court based its finding of good faith on three things.[3] First, the court found that Mother was involuntarily transferred to San Francisco; second, that she must live in San Francisco to perform her business duties; and third, that it was necessary for Mother to move to San Francisco for her continued employment with Administaff and for her financial stability.

Father disputes these findings, arguing that Mother's move was not involuntary and that there were several jobs available in St. Louis that she could have taken with relatively the same impact on her income. Father argues that Mother made unreasonable demands for staying in St. Louis and that is why it appears she is unable to stay. He concludes that because Mother's salary could not compensate for the increase in cost of living in San Francisco, it is unreasonable for her to refuse to take a pay cut to stay in St. Louis, citing *Dixon v. Dixon,* 62 S.W.3d 589, 591–94 (Mo.App. W.D.2001). However, the trial court found that Mother's raise in salary did not take into account the cost of living increase she would also receive upon moving to San Francisco. Therefore, Father's assumption that she is essentially taking a pay cut to move there is unsupported.

Father also argues that Mother voluntarily accepted the position in San Francis-

---

**3.** In relation to this point, Father filed a Motion to Take Judicial Notice of Judgment. Because Mother's brief argues that Father had bad faith in opposing relocation, Father asks us to take judicial notice of the trial court's judgment concerning attorney's fees as a finding that Father had good faith in opposing relocation. However, our analysis concern's the trial court's finding of *Mother's good faith* and whether it was supported by substantial evidence. We note the reasons the trial court made this finding, and no mention of Father's good faith or bad faith is among them. Even assuming Father had good faith, our analysis remains the same. Thus, Father's motion is denied.

co; however, he fails to mention that had she declined the position, she would have lost her job with Administaff. The trial court found Mother applied for one other similar job in St. Louis to no avail. Furthermore, while Father's expert conducted a job search that yielded results, the expert did not know Mother's educational background nor did he know whether those companies would hire someone with such a background. Therefore, Father's assumption that there were many jobs here that Mother could have taken is similarly unsupported.

Finally, not only does Father argue a lack of good faith, but Father argues that Mother exhibited bad faith in that she left in order to decrease Father's time with Grant. However, for this he cites the notice Mother provided of her wish to relocate "due to an involuntary lateral job transfer" and her proposed custody arrangement, which did in fact contain less time for Father with Grant. The mere fact that Mother included a proposal with less time does not mean that her purpose in moving was to achieve that end. Rather, the practical reality of Mother's move meant that 50/50 time was no longer going to be possible.

Father also argues that Mother did not see the father-child relationship as more important than Grant's relationship with Mother's fiancé, and she left desiring that Grant spend more time with her fiancé, who lived in San Francisco, than with Father. The trial court found that Mother considered both Grant's relationship with Father and with her fiancé to be equally important. The trial court did not find that Mother left in order to deprive Father of time with Grant, and the trial court was in the best position to judge Mother's credibility on her reasons for moving. The trial court found her to be credible, and this finding was supported by substantial evidence and was not against the weight of the evidence.

Point denied.

### Best Interests of the Child

■ Father's second point is that the trial court's finding that relocation was in Grant's best interest was against the weight of the evidence and unsupported by substantial evidence. The trial court found that relocation was in Grant's best interest "due to [Father]'s lack of some parenting skills, lack [of] a stable household, significant eating out in restaurants with the minor child, and his lack of financial responsibility." The court also found that Mother "would be able to provide a stable living environment for the minor child in San Francisco, California." Father argues that Mother's testimony on this point was conclusory and inadmissible, there would be substantial interference with the child's time with his father and extended family, the relocation requires burdensome travel, and there was no evidence of any economic benefit to moving. He relies on these factors based on our decision in *Fohey v. Knickerbocker*, 130 S.W.3d 730 (Mo.App. E.D.2004).

First, Father incorrectly classifies Mother's testimony about the San Francisco environment for Grant. He argues it was based only upon a number of brochures that she introduced at trial, and those brochures were inadmissible as hearsay. However, the transcript makes clear that Mother testified at trial based on her personal knowledge: she had seen these places and she described them in detail, unlike the mother's conclusory testimony in *Fohey*, 130 S.W.3d at 735. There was no error in the trial court's reliance on Mother's testimony here.

Second, Father argues that relocation would substantially interfere with the time Grant was able to spend not only with

Father, but with several members of Grant's extended family. The trial court found it noteworthy that Father did not begin to exercise his full allotted custody time with Grant until Mother told Father that she was engaged. Furthermore, the trial court noted that the time Grant spent with Father was not in a stable environment. Finally, while Grant would miss out on time with extended family in St. Louis, he does have one aunt in San Francisco he would be able to see more often. Past cases have noted that in our highly mobile society, it is unrealistic to confine a parent to one geographic location. *See, e.g., Thomas v. Thomas*, 989 S.W.2d 629, 634 (Mo.App. W.D.1999).[4] Unlike the father in *Fohey*, the trial court found that Father did not provide a stable living environment for Grant, and Grant will have some extended family in the new location. *Compare Fohey*, 130 S.W.3d at 737 (noting the father's active and positive involvement in the child's life). It was not against the weight of the evidence for the trial court to find that despite the deprivation of Grant's time with his Father and extended family in St. Louis, it was in Grant's best interests to relocate.

Father's next argument is that the relocation requires burdensome travel. The parenting plan adopted calls for Grant to alternate between parents every two weeks before he starts school, and after that calls for a total of up to eight round-trips to St. Louis.[5] Father argues that this is excessive, based on this Court's

decision in *Maher v. Maher*, 951 S.W.2d 669, 676 (Mo.App. E.D.1997). In *Maher*, we found that visitation requiring several hours of travel between St. Louis and Florida to spend only nine to twelve hours together was unreasonable. *Id.* Furthermore, we found that the plan requiring round-trip travel between St. Louis and Florida up to ten times per year for a child under six and then up to thirteen times thereafter to be unreasonable. *Id.* Here, Grant will travel to St. Louis between six and eight times beginning in August 2008, and it will be for a period of at least three days each time, comporting with our previous holdings stating that visitation requiring travel should be for no less than three days. *See, e.g., Lavalle v. Lavalle*, 11 S.W.3d 640, 648 (Mo.App. E.D.1999).

■ Finally, Father is correct that the court found there was not enough evidence to show an economic benefit to Grant of moving. However, this is not a prerequisite to relocation, as Father, relying on *Fohey*, tries to make it. While economic benefit *can* be a factor weighing in favor of relocation, a parent is not required to show it in order to be permitted to relocate. In *Fohey*, the trial court had found economic benefit based on the mother's conclusory testimony, and this Court found lack of substantial evidence to support that finding. 130 S.W.3d at 736–37. Here, the trial court did not rely on any economic benefit, but rather found the quality of life

---

4. Father makes much of the fact that this case employs the four-factor test for best interests of the child which was overruled by our Supreme Court in *Stowe v. Spence*, 41 S.W.3d 468, 469 (Mo. banc 2001). However, its comment on the mobility of society is consistent with a current analysis for determining a child's best interests.

5. He would go back and forth up to twice in the summer, because Father gets an eight-week period during which Mother may exer-

cise custody for up to five days. Grant would also spend each spring break with Father, along with each President's Day weekend, Martin Luther King Day weekend, and Memorial Day weekend. Grant would spend every other Christmas, Thanksgiving, and Labor Day holiday with Father, but at most two of those in one year. Therefore, the amount of travel to St. Louis for Grant would be at least six round-trips and at most eight.

economically would be approximately the same for Grant in San Francisco as it had been in St. Louis. The trial court based its determination of Grant's best interests on other factors, and each of those, as stated above, is supported by substantial evidence.

Point denied.

### Admission of Evidence

■■■ First, Father argues that the trial court erred in allowing evidence of his prior business dealings. He says the court's reliance on this information amounted to a determination based on his financial status, which is prohibited by § 452.375.8. While he is correct that a court may not do this, he is incorrect in characterizing the trial court's actions as such. Trial courts are permitted to take into account a party's financial condition as it relates to financial stability and ability to manage finances. *See Malawey v. Malawey*, 137 S.W.3d 518, 523 (Mo.App. E.D. 2004). Here, the trial court determined that relocation was in the child's best interests in part because it found Father had a "lack of financial responsibility." This concerns not how much money he has, but how he handles money and the perceived effect of that on the child. The trial court's findings show that the court used the evidence for its proper purpose.

■■■ Second, Father argues that the court erred in refusing to admit evidence of past abuse Mother endured from her father and her step-father. Father argues that it was directly relevant, claiming Mother diminishes the father-child relationship because of her past abuse. He argues that § 452.375.2(6) mandates consideration of such abuse because it says the court should consider "[t]he mental and physical health of all individuals involved, including any history of abuse of any individuals involved." However, that section goes on to discuss domestic violence in the home and how it affects the child. The one case Father cites in which the Western District reversed because of a trial court's failure to consider evidence of abuse, *K.R.P. ex rel. Brown v. Penyweit*, 219 S.W.3d 829 (Mo.App. W.D.2007), dealt with evidence of abuse *between* a mother and a father. Here, Father argues about evidence of past abuse Mother endured and did not show it relevant to any exposure of Grant to abuse. Father was not prejudiced by the court's failure to include this evidence. The statute Father cites states the trial court need consider only relevant factors, which could include past abuse. Here, Father did not show that it was relevant. The trial court did not abuse its discretion in refusing the admission of such evidence.

Point denied.

### Parenting Plan

Father's fourth point raises several claims concerning the Parenting Plan included in the judgment. First, he argues that the visitation schedule for when Grant starts school inappropriately limits Father's visitation during school holidays, thus denying Father frequent, continuing, and meaningful contact with Grant. He also argues that the plan fails to provide that Father may enroll Grant in private school at his own expense. Finally, he argues that the court failed to include in the plan the statutory relocation notice, as required by § 452.377.11.

■■■ First, Father argues that because the court did not grant him visitation during all of Grant's school holidays, it has failed to ensure that Grant maintains frequent, continuing, and meaningful contact with Father, as required by § 452.377.10. As noted above, once Grant is in school, the plan calls for an eight-week summer stay with Father, along with visitation dur-

ing numerous holidays. Father has not pointed out any cases in which similar parenting plans were found to be insufficient. Essentially, Father wants three more holidays every two years. In this respect, we cannot find that through this plan the court has withheld frequent, continuing, and meaningful contact from Father.

Second, Father argues that the plan fails to include the provision—previously agreed-on by the parties in former parenting plans—that allows Father to enroll Grant in private school if he pays for it. Mother did not seek to modify this provision in her relocation action, and neither party disputes that it should be included. Because this action was a modification of custody and that provision was not modified, it remains in effect.

Third, Father's argument about the trial court's failure to include statutory notice language was not included in his Motion to Amend, and therefore not preserved for appeal. Pursuant to Rule 84.13(c), we could review for plain errors affecting substantial rights and causing manifest injustice, but we see no such error here.[6]

Point denied.

### Findings of Fact

Father's final point is that the trial court failed to make findings concerning 1) whether Father participated in age-appropriate activities with Grant and in his medical and educational care; and 2) whether relocation would change Grant's environment from one of being surrounded by a large and active extended family to one with little to no family, and how that affected Grant's best interests. He argues the trial court had to include these findings under Rule 73.01(c) because Father requested them.

The failure of a trial court to make findings of fact which were properly requested does not always require reversal. *Hilligardt–Bacich v. Bacich,* 174 S.W.3d 11, 14 (Mo.App. E.D.2005). We will reverse only when such failure materially interferes with our ability to review; otherwise, if the record is sufficient to support the judgment, we will affirm. *Id.* Rule 73.01(c) provides that if the trial court does not make findings on specific factual issues, then we consider them as having been found in accordance with the judgment reached. This applies even to findings which one party requested but the trial court did not make. *See Piazza v. Combs,* 226 S.W.3d 211, 220 (Mo.App. W.D.2007).

Here, the court found that relocation was in Grant's best interests. The court also noted the amounts of extended family that Grant had in both San Francisco and St. Louis, and it found that if Father were involved in Grant's activities, he would be able to continue to do so after relocation, but to a lesser degree. Given that the court found the relocation to be in Grant's best interests, we infer that both of the findings Father mentions were found in accordance with the trial court's determination. The record sufficiently supports this finding, and our review has not been impaired because the trial court was not more specific.

Point denied.

### Conclusion

The trial court's findings that Mother sought to relocate in good faith and that relocation was in Grants best interests were supported by substantial evidence and were not against the weight of the evidence. The trial court did not improp-

---

**6.** Each party has this right to notice of a proposed relocation pursuant to § 452.377.2.

Father does not lose this right simply because it is not restated in the judgment.

erly use evidence of Father's prior financial dealings, nor was Father prejudiced by the court's failure to consider evidence of Mother's past abuse by her father and step-father. The parenting plan the court adopted complied with statutory requirements save one, which does not result in plain error. Finally, the trial court's failure to make Father's requested findings of fact do not interfere with our ability to review the court's judgment; thus we assume those facts were found in accordance with the judgment reached.

AFFIRMED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.