## WILLIAM R. NELSON, Respondent, v. JAMES A. KELLEY, Appellant.

**Kansas City Court of Appeals, May 23, 1910.**

**LANDLORD AND TENANT: Trespass: Injunction.** Where a lease contained a provision that the premises could not be sub-let without the consent of the landlord and that if they were the latter could declare a forfeiture and enter into possession, it was *Held*: that upon his entering possession for that cause, and the original lessee continuously trespassed upon the premises by coming upon them and remaining against the will of the landlord, he could be restrained by injunction.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*Joseph S. Rust* and *T. A. Frank Jones* for appellant.

*Douglass & Watson* for respondent.

Where a landlord has the legal right to the possession of the premises and has made a peaceable entry upon the land, he can maintain an action to enjoin a continuing trespass.    24 Cyc. 1398; Muyford v. Richardson, 6 Allan (Mass.) 77; Curl v. Lowell, 19 Pick. 25; Holly v. Brown, 14 Conn. 269; Alexander v. Hodges, 3 N. W. 417; Taylor on Landlord and Tenant, sec. 296; Tiedeman on Real Property, sec. 693.

ELLISON, J.—This proceeding was instituted by filing a bill for injunction to restrain defendant from trespassing upon plaintiff's property or interfering with his possession thereof. A temporary writ was granted which was afterward made perpetual and defendant appealed.

It appears that plaintiff bought the property, with a two-story building thereon, from Pearl Barton, and that he took the deed in the name of his agent, Ennis, who shortly thereafter deeded it over to plaintiff. It further appears that all after proceedings were conducted by plaintiff through Ennis as his agent, and we will therefore state occurrences as having transpired with or by plaintiff instead of the agent. The conveyance to plaintiff was a general warranty deed dated 22d June, 1908, and it contained a provision that it was "made subject to the rights of tenants now in possession and now occupying the premises." The lease under which these tenants were holding was made to defendant by Barton on the 1st of November, 1906, for one year, and at the expiration thereof and before plaintiff's purchase, it was renewed for a term expiring, by its own limitation, the 30th day of September, 1909. It was assigned to plaintiff on the 30th of June, 1908, a few days after he purchased the property. It contained a provision that no sub-letting should be made by defendant except with the consent of the lessor and that if there was a violation of this provision the lessor "may, at their option terminate the lease and the lessees shall immediately surrender peaceable possession of the premises to the lessor, and if they fail to do so the lessor may take possession thereof, using such force as may be necessary."

Defendant recognized plaintiff as owner and lessor of the premises by paying him rent for the months of July and August. He offered him rent for September, October and November, and plaintiff refused to

accept it on the ground that he had forfeited the lease by sub-letting.

Defendant had sub-let the premises to different parties before plaintiff's purchase and one Bowman, a sub-tenant, was occupying them at the date of his purchase, June 22, 1908. But they were afterwards repeatedly sub-let without plaintiff's consent, and as stated, plaintiff refused rent offered him by defendant. The premises were occupied as a restaurant and the sub-letting seems to have been accomplished by the occupying tenant selling out to a purchaser and the latter, in turn, selling to another. Bowman, who was in possession when the premises were conveyed to plaintiff, kept them until about the middle of September, when a person called a Greek was installed as sub-tenant and the latter shortly sold to one Rich, who held till some day in November, when he sold to one Radford, who remained in possession until the 28th of November, the date plaintiff claims to have taken actual possession. Some two weeks prior to this, on the 15th of October, 1908, plaintiff notified defendant in writing that he elected to terminate the lease on the first day of November following, on account of his having violated its terms in sub-letting.

It seems that Radford's sub-tenancy was from month to month, ending the 29th of the month. It further appears that plaintiff made known to Radford his intention to take possession and that Radford signified his willingness to surrender and go into another building nearby, on the same street. He began to move on the 28th of November, and while in the act of transferring his furniture, restaurant fixtures, etc., to his new place, but with only a part taken out of the old, defendant entered, without his, or plaintiff's, consent. Radford found him in the building on his return to it for other of his goods, and that he had brought in a table. Radford threw the table out of the building and ordered defendant out, but he refused

to go, and assaulted Radford, whereupon the latter sent for a policeman. On the same day Radford turned over the possession of the building to plaintiff by giving him the keys thereto: Plaintiff (that is, his agent, Ennis) told defendant to get out as he wanted to lock up. Defendant told him not to lock it and he, fearing trouble, sent for a policeman. The latter said he could do nothing unless he had a warrant for defendant. Plaintiff then got "a Pinkerton man" to come and stay in the building. Plaintiff then left the building, directing the man not to let anyone in. Defendant however remained in, and it appears that some time that night he had his brother bring in a mattress through the rear way and up the back steps to the second floor. Thus the two stayed in the building for perhaps a week, when plaintiff begun this proceeding. Defendant expressed it as that "they were guarding me there all the time." Defendant put a padlock on one of the upstairs rooms some time during the first night.

The case bears much resemblance to that of Metropolitan Land Co. v. Manning, 98 Mo. App. 248, to which we refer for a full discussion of legal questions involved. In that case this court decided that where a trespass is continuous and harassing and would involve a multiplicity of suits, an injunction would lie to restrain it.

It was likewise determined in that case that where the lease provided for a forfeiture and right to enter on a violation of the terms of the lease, that such entry, under such provision, was a forfeiture, and that if possession of the premises was thereby secured and retained, it was sufficient upon which to maintain an injunction against repeated or continuous trespasses against an intruder.

We therefore only need to inquire whether the foregoing statement of evidence shows a forfeiture de-

Nelson v. Kelley.

clared and possession taken by plaintiff. His purchase of the property and the lease, was recognized by defendant for he paid him rent and it is conceded. Although there had been sub-letting by tacit consent or acquiescence of Mrs. Barton before plaintiff became the owner, yet it was made plain to defendant that not only did plaintiff not consent to further sub-letting, but he gave him written notice of his objection, and he refused to receive rent from him after August, for that reason. So, coming down to the 28th of November, the day plaintiff claims to have come into the actual possession, we find that Radford was in the occupancy of the building and that he delivered the keys and turned over the possession to plaintiff, who remained therein, through his agents, from thence on. It is true that defendant forcibly came into the building and remained, but he did so without a semblance of right. He admitted in testimony that he was attempting to take possession when Radford's time did not expire until the next day. We have thus a case of a lease openly violated against the consent of the landlord, and its forfeiture declared for that reason, together with possession taken on account thereof. It leaves defendant without legal standing. See in connection with Metropolitan Land Co. v. Manning, supra, the cases of Geer v. Zinc Co., 126 Mo. App. 173, and Davis v. Burrill, 10 Common Bench, 821.

The result is that we find the decree of the trial court was the only one which could properly have been rendered, and it is accordingly affirmed. The other judges concur.