REPRODUCTIVE HEALTH SERVICES,
INC., et al., Plaintiffs-Respondents,

v.

Sam H. LEE, et al.,
Defendants-Appellants.

No. 43720.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 27, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 15, 1983.

Application to Transfer Denied
Dec. 20, 1983.

James F. Malone, Andrew F. Puzder, St. Louis, for defendants-appellants.

Frank Susman, Clayton, for plaintiffs-respondents.

1. The other appellants are: Miriam A. Andrews, Joan E. Andrews, Nancy Jo Danis, William L. Bland, Valerie D. Volk, William P. Hannegan, Jean Klocker, Linda Hatch, Timothy Finnegan, Laura Armstrong, Linda Armstrong, and Joseph Koterski.

KELLY, Judge.

Sam H. Lee and twelve co-defendants [1] have appealed from the judgment of the Circuit Court of St. Louis County enjoining them from trespassing on plaintiff's premises, The Doctors Building, for the purpose or result of interfering, disturbing, disrupting, confronting, undermining or disuading the operation, activities or conduct of the plaintiffs' normal and ordinary business, or of the business of its employees, patients and/or business invitees, or from engaging in any other unlawful acts with those intents, purposes or results.

The plaintiffs are the Reproductive Health Services, a non-profit corporation organized under the laws of Missouri, and conducts medical abortion services for its patients in a portion of the Doctors Building which it has leased from its fellow plaintiffs, Werner Kugler and Gerda Kugler, the owners of the building. The defendants are individuals opposed to abortions and allegedly members of People Expressing A Concern for Everyone (PEACE).

On May 21, 1980, the plaintiffs instituted the action against the defendants, individually and as a class, seeking a temporary restraining order, a preliminary injunction, a permanent injunction and money damages.[2] A temporary restraining order was entered the day the petition was filed and defendants were ordered to show cause why a preliminary injunction should not be issued. On June 27, 1980, an evidentiary hearing was held and after extensive testimony from the parties to the action a preliminary injunction was issued enjoining all of the defendants then properly before the trial court, and the temporary restraining order was continued as to those defendants not then properly before the court.

Subsequently, on July 7, 1980, the trial court entered an order complementing its order of June 27, 1980, and scheduled a hearing on the merits of plaintiffs' petition

2. The Count for damages was dismissed by plaintiffs on July 7, 1980, after a preliminary injunction had been entered.

for September 18, 1980. On July 29, 1980, Valerie Volk, one of the named defendants before the trial court, filed an application for change of judge pursuant to Rule 51.05.[3] Copies of this application were mailed to the attorneys of record for all parties upon whom service was had. The trial judge, without explanation, denied the application on September 17, 1980, and the cause proceeded to trial on the merits the following day, September 18, 1980. On October 30, 1980, the judgment from which this appeal is taken was entered and a timely notice of appeal was filed.

At the trial on the merits the plaintiffs' evidence was that Gerda and Werner Kugler, husband and wife, were partners in "West Pine Partnership" and owner of the Doctors Office Building at 100 North Euclid Avenue in the City of St. Louis, since July, 1979. Reproductive Health Services, a not-for-profit tax-exempt Corporation, leased the entire second floor of the building, including the hallways. Access to the second floor is via elevators and the two doors on the floor are constantly locked to prevent people who had no business on that floor from entering.

On July 5, 1979, defendants Klocker, Lee and Peterson gained access to the premises occupied by Reproductive Health Services, and blocked access to the clinic portion of the premises leased by Reproductive Health Services from the waiting room by sitting on the floor. When asked to leave each responded that they would not leave. The police were summoned and the defendants were removed from the premises—"carried out." Formal trespass charges were filed against each of these defendants.

On September 15, 1979, defendants Klocker, Lee, Peterson and Hatch again entered the premises, went to the same location on the second floor and blocked the premises so that it was impossible for patients to go through the door into the general facility area. When requested to leave, the defendants refused and again the police were summoned, and when they refused the

request of the police that they leave, they were forcibly removed from the premises by the police officers.

Similar incidents occurred on December 8, 1979, April 5, 1980, and May 15, 1980. Defendants Bland, Hannegan, Finnegan, Danis, Kidwell, the two Andrews sisters, Volk, Hatch, Klocker, Lee, Peterson and Gibson participated in the December 8, 1979 incident. The Andrews sisters, Finnegan, Koterski, and Klocker participated in the April 5, 1980 incident. Bland, the Armstrong sisters, the Andrews sisters, and Lee participated in the May 15, 1980 incident.

The defendants' conduct disrupted the ordinary surgery scheduled to be performed, caused some patients who witnessed the occurrences to cry, created stress on staff members, and caused some patients to go to another abortion clinic. Some employees of the clinic were unable to enter the clinic premises, and the business could not be conducted in a normal manner. Doors which had not previously been locked now had to be locked and security had to be stepped-up.

These incidents also made other tenants of the building very unhappy.

Appellants initially contend that the trial court erred in permanently enjoining them from going on or entering the premises owned or occupied by the plaintiffs in that there was no showing that the defendants (1) had committed repeated trespasses on the premises; (2) had caused irreparable injury to plaintiffs; or (3) plaintiffs did not have an adequate remedy at law. We disagree.

The standard of review in this case is that set forth in Rule 73.01 and more fully declared in *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976), and therefore we shall only reverse on the grounds espoused by appellants if the judgment of the trial court is not supported by substantial evidence, is against the weight of the evidence, or is an erroneous application of the law. *Chicago Title Insurance Company, et al. v.*

---

**3.** All citations to Missouri Rules of Civil Procedure are to the Rules in effect at the time of the

procedural question under review, i.e. July, 1980 unless otherwise noted.

*First Missouri Bank of Jefferson County,* et al., 622 S.W.2d 706, 707[1] (Mo.App.1981). Substantial evidence is evidence which, if true, has probative force upon the issues, i.e. evidence favoring facts which are such that reasonable men may differ as to whether it establishes them. It is evidence from which the trier or triers of fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts to establish which the evidence was introduced. *Terminal Warehouses of St. Joseph, Inc. v. Reiners,* 371 S.W.2d 311, 317[7] (Mo. 1963); *Smoot, et al. v. Marks,* et al., 564 S.W.2d 231, 236[2] (Mo.App. banc 1978).

■ Where a trespass is recurring and would involve a multiplicity of suits an injunction will lie to restrain it. *State ex rel. Janus v. Ferriss,* 344 S.W.2d 656, 660[6] (Mo.App.1961); *Nelson v. Kelley,* 145 Mo. App. 110, 128 S.W. 832, 834[1] (Mo.App. 1910). The evidence in this case is that the trespasses were recurring and there were threats that they would be continued into the future so long as abortions were performed on the premises.

■ The issuance of injunctive relief and the terms and provisions thereof are, in a proper case, matters resting within the sound discretion of the trial court and said court is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances and equities of the case before it. *May Department Stores Company v. County of St. Louis, Missouri,* 607 S.W.2d 857, 870[8] (Mo.App.1980).

■ We believe the trial court, under the facts, did not abuse its discretion and the granting of the permanent injunction was supported by substantial evidence, was not against the weight of the evidence, and applied the law correctly. We therefore rule this point against appellants.

Appellants also contend that the trial court erred in allowing a witness for plaintiffs to testify from a list prepared by said witness and plaintiffs' counsel as to the identity of the defendants when she had not testified that her recollection needed to be refreshed and when there was no showing that such writings were made at or about the time of the event they described.

The witness, Vivian Diener, Clinic Administrator of Reproductive·Health Services, is responsible for the day-to-day activities of the clinic—"basically the person in charge." She was present on the premises on each and every occasion when the defendants trespassed. The number of the defendants participating in these sit-ins varied on each occasion from three to thirteen. During the course of her testimony she was permitted to use a list containing the dates of the several occasions when the offices of Reproductive Health Services were entered and the names of the defendants who came into the offices on each occasion to refresh her recollection.

We have not been favored by the parties with a copy of this list but have discerned its form from a verbal description in the transcript of the record on appeal.[4]

■ Generally, however, the question whether a witness may be allowed to refresh his recollection is a matter reposing in the discretion of the trial court and is reviewable only for abuse. *State ex rel. Williams v. Williams,* 609 S.W.2d 456, 459[1] (Mo.App.1980), *State v. Couch,* 567 S.W.2d 360[3] (Mo.App.1978). A witness who does not recall or is uncertain about matters which he is called upon to testify may, under certain circumstances and conditions, be permitted to refresh his memory by referring to a memorandum or writing. *Watson v. Meredith Development Company,* 410 S.W.2d 338, 341[1–3] (Mo.App.1966). Whether a witness should be permitted to refresh his memory by referring to a writing or some other object depends upon particular circumstances present in each

---

4. This list was described as what "appears to be is a page divided into two halves, . . . ." On the upper half were five dates listed with a series of names thereafter; on the bottom half was a series of names listed with dates opposite them.

case. *State v. Freeman,* 489 S.W.2d 749, 752[7] (Mo.App.1973). A prerequisite for the refreshing of a witness's recollection would be his statement that he needed the aid of a writing to recall the facts to his mind. *State ex rel. Williams v. Williams,* 609 S.W.2d l.c. 459[2]. We have found no statement by Ms. Diener in the transcript of her testimony that she needed this list prepared by herself and her counsel to recall the dates on which these defendants trespassed on the premises of Reproductive Health Services, nor to identify which of these individuals participated in the trespasses on specific dates as a prerequisite to her employing the list to refresh her recollection. She did testify, however, that she did use the list to refresh her memory in testifying about the events and the individuals participating in them.

■ There are two situations which arise in connection with a witness refreshing his recollection. The first is when the witness can refer to a writing and then testify independently thereof so that his recollection is refreshed and he is able to testify from his own recollection. The second situation is when a witness is unable to testify independently of the writing even after he has looked at it, but can testify only by reading from the writing and not from his independent recollection, even after it is refreshed. In the first situation the writing is of relative unimportance because the witness is not testifying from the writing but is in fact testifying from his own recollection although after it has been refreshed. In the second situation, the writing is of extreme importance because the testimony then comes only from the writing and not from the witness's recollection. *State ex rel. Williams,* id., l.c. 459.

■ If reference to a memorandum stimulates the recollection so that the witness presently remembers the facts and swears to them, the evidence rests in the testimony of the witness and not the memorandum which is used to revive his memory. Consequently, if looking at a memorandum produces a present recollection so that the witness can testify from resensing or revi-

sualization of the event independent of the writing, the time when the memorandum was prepared, or the person who prepared it, or whether it be an original writing or a copy is of little moment. *State v. Freeman,* 489 S.W.2d l.c. 753 [9–10].

According to appellants the trial court erred in permitting Ms. Diener to testify from a list prepared by her and plaintiff's attorney when (1) she had not testified that her recollection needed to be refreshed and (2) when there was no showing that such writings were made at or about the time of the event they described.

This case involved a total of sixteen defendants, and at least five separate incidents when some, but not all, of the defendants allegedly trespassed on plaintiffs' premises. On July 5, 1978, three individuals participated in a sit-in at the clinic; on September 15, 1979 four individuals did so; on December 8, 1979, thirteen individuals participated; on April 15, 1980, five individuals entered the premises; and on May 15, 1980, three individuals were involved.

■ During the trial on the merits, Ms. Diener testified that she was using the list to refresh her memory. We conclude that under the circumstances of this case— where five separate incidents of trespassing over a period of approximately ten months, and involving various defendants, some of whom participated in some, but not others of the trespasses, the trial court could, in the exercise of its discretion, permit this witness to employ the list used to refresh her recollection without any specific statement on her part that she needed the list to refresh her recollection. The crucial issue was whether her testimony was her own recollection of the events she described and her identification of the defendants who participated in the events to which she testified. In this court tried case the trial judge, as the trier of fact, was in a better position than are we to form a judgment relative to whether her testimony was her recollection refreshed or a parrotting of the list she and trial counsel had prepared prior to trial.

Appellants' counsel subjected Ms. Diener to cross-examination on this point and the trial judge determined that the testimony of Ms. Diener was past recollection refreshed. We find that there was no abuse of discretion in the trial court's ruling and so hold.

Appellants' final Point is that the trial court erred in overruling defendant Valerie Volk's and other defendants' request for change of judge because said request was timely filed and the granting of said request was mandatory.

Ms. Volk, on July 29, 1980, filed a request for change of judge pursuant to the provisions of Rule 51.05, after (1) the trial court had granted a temporary restraining order against all the defendants named in plaintiffs' petition; (2) had conducted an evidentiary hearing on whether a temporary injunction should be granted on June 27, 1980; (3) entered an order temporarily restraining those defendants upon whom service of process had been obtained and continuing the temporary restraining order in effect against those defendants who had not been served with process, and (4) on July 7, 1980, entered an order complimenting its order of June 27, 1980, and set the hearing on the merits for September 18, 1980.

On September 17, 1980, the day prior to the hearing on the merits the trial judge denied Ms. Volk's request.

The plaintiffs argue that the trial court correctly ruled the request because Ms. Volk failed to comply with Rule 51.05(c), in that said request (1) was not properly made, (2) was untimely, and (3) was not made on behalf of or joined in by any other appellants.

According to Rule 51.05 a change of judge shall be ordered in any civil action upon the filing of a written application therefor by *any party* or by his agent or attorney; the application need not allege or prove any cause for such change of judge and need not be verified. It must be filed at least thirty days before the trial date or within five days after a trial setting date has been made, whichever date is later, unless the trial judge has not been designated within that time, in which event the application may be filed within ten days after the trial judge has been designated or at any time prior to trial, whichever date is earlier. A copy of the application and notice of the time when it will be presented to the court shall be served on all parties; any party defendant may make application for such change of judge and the granting of such application exhausts the right of a co-defendant to a change of judge.[5] Upon the presentation of a timely application for a change of judge, the judge shall promptly sustain the application and, in a multi-judge circuit, transfer the civil action to another judge in the same circuit, or shall call in another judge as authorized by Article V, § 15, of the Constitution, or shall request the Supreme Court to transfer a judge.

It has been held that "(T)he right of a defendant to disqualify the judge 'is one of the keystones of our legal administrative edifice' and our courts therefore adhere to a rule of liberal construction in favor of the right to disqualify." *State ex rel. Horton v. House,* 646 S.W.2d 91, 93[1] (Mo. banc 1983). In *State ex rel. McNary v. Jones,* 472 S.W.2d 637, 639–640 (Mo.App.1971), this court said: " . . ., no system of justice can function at its best or maintain broad public confidence if a litigant can be compelled to submit his case in a court where the litigant sincerely believes the judge is incompetent or prejudiced. Admittedly, a litigant's challenge to a judge's ability to afford a fair trial may ruffle the judicial feathers and at times, as here, may snarl the smooth flow of a court's docket. Under Rule 30.12 that is the price to be paid for a judicial system that seeks to free a litigant from a feeling of oppression."[6]

Under Rule 51.05 the right to a change of judge is placed in the category of

---

5. There is an exception to this exhaustion proviso in condemnation cases, but it has no application to this appeal.

6. Rule 30.12 is for criminal cases; its counterpart is Rule 51.05 for civil proceedings.

a peremptory jury challenge and, aside from service of a copy of the application and notice, the only prerequisite for granting a change of judge is a timely application for the change. *Natural Bridge Development Co. v. St. Louis County Water Co.,* 563 S.W.2d 522, 525[1] (Mo.App.1978).

Ms. Volk, through her attorney of record, on July 29, 1980 filed her application for change of judge and the application for said change bears a proof of service stamp whereby it is stated that on July 28, 1980, a copy of the instrument was served upon the attorneys of record of all parties to the cause at their business address as disclosed by the pleadings of record in said cause, in an envelope, postage fully prepaid, and by depositing said envelope in a U.S. Post Office mail box in St. Louis, Missouri. This application did not, as plaintiffs contend; contain a notice of the time it would be presented to the court; as required by Rule 51.05(c).

Plaintiffs do not contend that they were not served with a copy of Ms. Volk's application for change of judge; their complaint is that they were never served notice of any hearing on the application. Nevertheless, counsel for Ms. Volk and plaintiffs appeared before the trial judge on September 16, 1980, two days prior to the hearing on the merits, presented the application for change of judge, argued the application, and submitted the question to the trial court. On the following day, September 17, 1980, the trial court denied the application for change of judge. The purpose of the law in requiring notice is that the party notified have an opportunity to be heard, *State ex rel. Murphy v. Aronson,* 330 S.W.2d 140, 145[6] (Mo.App.1959), and where, as here, when plaintiffs' counsel appeared at the trial judge's chambers, participated in argument, and received a favorable ruling, he either waived the failure of Ms. Volk to serve notice, *Moffett v. Commerce Trust Company,* 283 S.W.2d 591, 600[14] (Mo.1955), or was not prejudiced thereby.

Under these circumstances we hold that the failure of Ms. Volk to give notice to plaintiffs when her request for change of judge would be presented was not a ground for denying Ms. Volk's request for change of judge.

The more difficult question for decision is whether the request for change of judge was timely filed. Whether it was depends upon whether the application for change of judge was filed at least thirty days before the "trial date." Rule 51.05(b).

Defendants contend that the "trial date" was the date set by the trial court for the hearing on the merits, September 18, 1980, and since Ms. Volk filed her application for change of judge on July 29, 1980, it was timely filed.

Plaintiffs contend that the application for change of judge was not timely filed because the hearing on the granting of the temporary injunction was the "trial date" referred to in Rule 51.05(b), and therefore Ms. Volk's application came too late.

The Rule itself does not define the term "trial date" as it is used in Rule 51.05(b), and we have not been cited any authority whether a hearing on a show cause order constitutes a trial within the terms of Rule 51.05(b). This court, in *Natural Bridge Development Co. v. St. Louis County Water Co.,* 563 S.W.2d l.c. 522, 525[3] (1978) although urged by the parties to that appeal to rule whether a hearing on the show cause order constituted a trial within the meaning of the rule, held that in the posture of that appeal it was unnecessary to rule on the question.

From our reading of the cases we conclude that the question before us is whether the "hearing on the merits" is a continuation of the hearing on the order to show cause why a temporary or preliminary injunction should not be issued, and, if so, whether the date on which the hearing on the show cause order was set is the "trial date" triggering the time within which an application for change of judge must be filed.

This is an injunction proceeding, and in such a proceeding there are three permissible phases. First, a *restraining or-*

*der* granted against the defendant, with or without notice or hearing. Second, a *temporary injunction* granted after notice and *summary* hearing. Third, a *permanent injunction* granted after pleadings are made up and the evidence is fully developed. At plaintiff's election he may forego the first, or both the first and second phases, and proceed directly to the third phase. *Bayer v. Associated Underwriters, Inc.* et al., 402 S.W.2d 11, 12[1, 2] (Mo.App.1966).

In June, 1980, when the hearing on the order to show cause why a preliminary injunction should not issue, Civil Rule 92.02 and § 526.050 authorized the issuance of a temporary injunction "when it shall appear by the petition" that the plaintiff is entitled to the relief demanded and (1) such relief, or any part thereof, consists in restraining the commission or continuance of some act of the defendant, the commission or continuance of which, during the litigation, would produce injury to the plaintiff, or (2) when, during the litigation, it shall appear that the defendant is doing, or threatens, or is about to do, some act in relation to plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual. Civil Rule 92.19 provided that when a temporary injunction was requested, and the trial court deemed proper, the defendant "should be heard," i.e., be afforded an opportunity to show why a temporary injunction should not be granted. It was not contemplated that at the hearing on the show cause order pertaining to a temporary injunction, there should be a trial on the merits of the request for a permanent injunction. There was no requirement, nor was it contemplated, that at the hearing on the show cause order the plaintiff would present all of its evidence on the merits of the request for a permanent injunction nor did Civil Rule 92.19 necessarily contemplate that it was necessary for the plaintiff to present any evidence. The burden was expressly placed on the defendant to show cause why the temporary injunction should

not be issued. When the petition is sufficient, and by it the plaintiff seeks to enjoin permanently the commission or continuance of some act of the defendant, and the trial court is of the opinion that the evidence at the hearing on the show cause order does not warrant the issuance of a temporary injunction, the request for a temporary injunction should be denied. However, the determination as to whether the permanent injunction should be granted or denied, absent some impelling reason, must await "the trial on the merits" after the issues are drawn by all the pleadings. Unless the parties otherwise agree, the cause may not be finally determined on the evidence submitted at the hearing on the application for the preliminary injunction. *State ex rel. Eagleton v. Cameron,* 384 S.W.2d 627, 629–630[1–4] (Mo.1964). 43 C.J.S. Injunctions § 199d(3) p. 921.

This court pointed out in *Bayer* that a jurisdictional line of demarcation exists between the hearing on the motion for a temporary injunction and the trial on the merits for a permanent injunction, and stated that the reason for this line of demarcation was that the primary object of the former is to maintain an existing status until the latter is adjudicated. 402 S.W.2d l.c. 13. A denial of a prayer for a temporary injunction is not appealable. *Frimel v. Humphrey,* 555 S.W.2d 350, 352[3] (Mo.App. 1977); it is an interlocutory order only.

There was, in this case, no stipulation that the hearing on the show cause order and the trial on the merits should be heard simultaneously; in fact, the order entered after the hearing on the order to show cause specifies that a temporary injunction was issued and the "final hearing on the merits" was scheduled for September 18, 1980. Nor is there any evidence that the defendants were noticed by the trial court that the two phases of the injunction proceeding were being consolidated. *Cooper v. Anschutz Uranium Corporation,* 625 S.W.2d 165, 169[2] (Mo.App.1981),[7] and there is no

---

**7.** At the time of the trial on the merits former Rule 92 (92.01–92.20), Injunction was in effect. Those rules contained no provision for ad-

vancement or consolidation. The present Rule 92.02(a)(2), which was adopted June 5, 1980, and did not become effective until January 1,

order of the court ordering a consolidation of these phases of the injunction preceeding. The hearing on the show cause order is a probable cause procedure similar to a preliminary hearing in a felony prosecution and under Rule 92, in effect at the time of trial on the merits, should have no impact on whether a permanent injunction should issue.[8]

While we were cited no Missouri case defining the term "trial" it has been defined as "A judicial examination and determination of issues between parties to action * * *; whether they be issues of law or fact. * * * A judicial examination, in accordance with law or fact, before a court that has proper jurisdiction." Black's Law Dictionary 1348 (5th ed. 1979). The term has been defined also as ". . . a judicial investigation and determination of the issues between the parties to an action * * * An examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause, for the purpose of determining such issue. * * * Technically, that step in an action by which issues or questions of fact are decided, often signifying a judicial examination of issues, whether of law or fact." Ballentine's Law Dictionary, 1298 (3rd ed. 1969).

■ So far as we have been able to ascertain, this is a case of first impression in Missouri. It is clear that for purposes of a motion to disqualify a judge under Rule 30.12 or 51.05, a probation hearing is not a separate, independent proceeding, but the plea bargain proceedings culminating in a suspension of imposition of sentence and the placing of the defendant on probation, constitute a "trial" for the purpose of either Rule and the probation revocation hearing is a mere continuation of those proceedings. Therefore it has been held that the relator in a prohibition proceeding was not entitled to a change of judge from the trial judge

who had accepted the plea, suspended the imposition of sentence, and placed him on probation on the revocation hearing. *State ex rel. O'Brien v. Murphy,* 592 S.W.2d 194, 195[2] (Mo.App.1979).

■ Nor may an application for change of judge be used to subvert proceedings already begun by a trial court. In *McKenzie v. McKenzie,* 646 S.W.2d 897 (Mo.App. 1983) a decree of dissolution of marriage had been entered after an evidentiary hearing on November 5, 1981, and at that time the trial court took the matter of a property settlement agreement between the parties and custody of the children under advisement, and continued the case to December 10, 1981. The parties asked the trial court to approve the property settlement agreement. However, on December 7, 1981, the wife filed a motion to set aside the marital settlement agreement, and filed a notice requesting that the motion be heard on December 10, 1981. The hearing on the motion was passed until January 7, 1982, and again until January 14, 1982, when the matter of the marital settlement was "taken under advisement," until the motion to set it aside was heard on January 14, 1982. On January 12, 1982, the wife filed a request for change of judge with a notice that it would be heard at the same time the motion to set aside the marital settlement was scheduled on January 14, 1982. The motion for change of judge was denied and after an evidentiary hearing on the motion to set aside the marital agreement it was overruled. In affirming the trial court, the reviewing court said: "All that appellant's motion to set aside the agreement served was to reopen the case for the further hearing of evidence upon the issue on conscionability of a matter already begun by the trial court, not a new issue injected into the case." id. l.c. 898–899.

---

1981, copies Fed.R.Civ.Proc. 65(a)(2) and provides that before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application.

8. *Parshall v. The Kansas City Star,* 441 F.Supp. 349, 355[2] (D.C.W.D.Mo.1977) held that on a trial on the merits of the case the issues must be tried as though no temporary injunction had been applied for or issued.

In *Marriage of Crossland,* 620 S.W.2d 40 (Mo.App.1981) the same result was reached where, after a decree of dissolution had been entered the husband filed a motion for new trial, or, in the alternative that the court open the judgment, take additional testimony and enter a new judgment. The trial court sustained the motion for a new trial as to the issue of the wife's employment and the effect, if any, on the order distributing the marital property and the amount of child support. The husband then filed a change of judge, which was denied. Because of the qualified and limited nature of the order on the motion for new trial the reviewing court held that the order was in effect an opening of the judgment for amplification of the record by the taking of additional testimony as the husband had requested and as specifically authorized by Rule 78.01. The court said, l.c. 42: "The narrow scope of Judge Moore's ruling resulted in a continuation of the case before the court, and, consequently, the husband's application for a change of judge was not timely."

In *Jenkins v. Andrews,* 526 S.W.2d 369 (Mo.App.1975) the plaintiffs after the trial judge had indicated to them that he was going to sustain the defendants' motion to dismiss unless an amended petition was filed, asked leave to amend, and the trial court granted thirty days for such purpose. However, instead of amending their petition, plaintiffs filed an application for change of judge. Defendant objected to the application, and after argument the trial judge entered an order overruling the motion for summary judgment, sustained the motion to dismiss, and dismissed the petition with prejudice. He then sustained plaintiffs' application for change of judge. Plaintiffs appealed claiming, among other trial court errors, the failure of the trial judge to disqualify himself prior to ruling on the defendants' motion to dismiss. The reviewing court held that because the motion for summary judgment and to dismiss had been taken up by the court, prior to the filing of the request for change of judge the trial court did not err in ruling on the

motions already submitted to it before acting on the request for disqualification.

In *D.E.J. v. G.H.B.,* 631 S.W.2d 113 (Mo. App.1982), a proceeding to terminate parental rights, the natural mother of a minor child sought a change of judge after a trial in juvenile court, and an appeal to the Missouri Court of Appeals, Western District, which remanded the cause to the juvenile court for the purpose of formulating findings of fact on a record already complete as an adjunct to the original trial. The mandate also authorized the juvenile court judge to "take further evidence if deemed necessary or advisable..." The trial court did not receive any further evidence. The reviewing court held that inasmuch as the mandate did not grant a new trial on "the cause of action or on a component issue, or an equivalent" the request for change of judge was properly denied. In effect, the proceedings in compliance with the mandate were merely a continuance of the trial in the juvenile court.

In *Hodges v. Oberdorfer Motors, Inc.,* 634 S.W.2d 205 (Mo.App.1982), a negligence action in two counts, for wife's injuries when she was struck by an unattended car which rolled on or from defendant's car dealership and for husbands loss of consortium; the jury brought in a verdict for the wife for $5,000.00 but found against the husband on his loss of consortium claim. The trial judge granted the husband a new trial on the issue of damages for loss of consortium. Prior to the new trial, husband filed an application for change of judge. The application was denied, and the husband appealed from a judgment on the second trial. The court in Hodges said: "If husband's new trial is a 'trial' under this rule [51.-05(b)], the application should have been granted." However, it held that this situation was similar to *In re Marriage of Crossland* because the trial judge was, in effect, dealing with the same case, having granted husband a new trial on damages only. After-trial motions, such as a motion for new trial, are available to parties to correct possible errors in proceedings before appeal; until the trial judge disposes of such motions, the cause is not appealable. The

342

wife's judgment was not final until after disposition of husband's claim, and the new trial covered only one of many issues in the original cause and "... was akin to the amplification of the record in *Crossland.*" The court held that the new trial under these circumstances was not a trial within the meaning of Rule 55.05 but, for all intents and purposes, was a continuation of the original trial and the husband was not entitled to a change of judge.

The court in *Hodges* distinguished *State ex rel. Horridge v. Pratt*, 563 S.W.2d 168 (Mo.App.1978) wherein the appellate court had remanded a dissolution of marriage decree for a new trial on the issue of wife's maintenance, and upon remand, the husband sought a change of judge. The judge in the original trial refused to disqualify himself, but the appellate court issued a writ prohibiting him from proceeding to hear the evidence on the maintenance issue because the application for change of judge should have been granted. The cases were distinguished on the grounds that "it is understandable that such influence (bias and prejudice) can affect a trial judge who presided over the original proceeding and has been reversed on appeal," whereas in *Hodges,* there had been no appeal and remand and the trial judge himself was correcting an inconsistency in the jury verdict returned in the first trial.

It is clear that there is one thread that runs through these cases, with the sole exception of *Jenkins v. Andrews;* there had been a *trial on the merits,* or the trial court had matters *under submission* prior to the filing of the application for change of judge. That is not the case here.

In the absence of any Missouri precedent in injunction proceedings, we have researched the law of other jurisdictions for some guidance. The following cases held that a hearing on an application for a temporary injunction pending action on a petition for a permanent injunction is not a "trial," within the meaning of a statute or rule providing that a party must, to be entitled to a change of judge, apply for said change within a specified time period prior

to the date the cause is set for trial. *City of Fort Wayne, et al. v. State ex rel. Hoagland,* 168 Ind.App. 262, 342 N.E.2d 865, 869[14] (1976); *State ex rel. Johnston v. District Court of Platte County,* 495 P.2d 255, 256 (Wyo.1972).

In City of Fort Wayne, Indiana Trial Rule 76(2) required that an application for change of venue be filed not later than ten days "after the issues are first closed on the merits," and Trial Rule 76(7) provided that a party shall be deemed to have waived a request for a change of venue *if a cause is set for trial* before the expiration of the date within which a party may ask for a change, evidenced by an order book entry and no objection is made thereto by a party as soon as such party learns of the setting for trial. Plaintiff's complaint was filed on January 11, 1973, and on January 15, 1973, the hearing on the preliminary injunction was set for March 8, 1973. On February 6, 1973, the City filed its answer, and its motion for change of venue on February 16, 1973. On February 20, 1973, Hoagland filed its motion to strike the motion for change of venue and on February 21, 1973, the trial court sustained Hoagland's motion to strike City's motion for change of venue. On February 22, 1973, Hoagland filed an application for default judgment for failure of the City to answer interrogatories. On March 5, 1973, the trial court entered a default judgment against the City and others permanently enjoining them from certain acts and awarding Hoagland money damages and attorney fees.

On appeal Hoagland contended the City had waived its right to an automatic change of venue by failing to object when the trial court set March 8, 1973 for a hearing on his application for a preliminary injunction because a hearing on a preliminary injunction is a trial within the meaning of Trial Rule 76(7). It was in this context that the appellate court held that a hearing on an application for a preliminary injunction is not a trial. It said that Hoagland's argument misconceived the function of a preliminary injunction because: "(T)he function of a preliminary injunction is to preserve the

status quo pending the final determination of the case on the merits." *City of Fort Wayne*, id., l.c. 869.

In *State ex rel. Johnston* the court was construing the word "trial" as that term was used in Rule 40.1(b)(1) W.R.C.P. which provided: "Any party, at least fifteen (15) days prior to the date set for trial, may move for a change of district judge on the grounds * * * (B) that the party or his counsel believe that the presiding judge is biased or prejudiced against the movant." The plaintiff, a majority stockholder in one of a number of plaintiff's corporations, filed a petition for a writ of mandamus requiring the district judge to forthwith call in another judge in a case where several corporations filed a complaint for injunction concerning a road matter in the district court. The Plaintiff introduced evidence and participated in a rather extensive hearing to secure a preliminary injunction and the district court had ruled both orally and in writing denying the temporary relief. It was after this ruling that the corporation filed a motion for change of judge. The motion was denied and this action followed. In granting the writ and requiring a change of judge for the trial on the merits, the court pointed out that there was a lack of specificity as to the meaning of the word "trial," and reading Rule 40.1(b)(1) in pari materia with Rule 65(a)(2), (which is the same as Rule 92.01(2) of the Missouri Rules of Civil Procedure), concluded that the writ should issue. Although the opinion did not specifically state, the recognition in Rule 65(a)(2) that the "trial on the merits" is distinct from a hearing on the application for a preliminary injunction was crucial to the decision.

There is another line of cases construing a statute or rule of civil procedure for a request for change of judge holding (1) that a "trial" was not actually commenced at the time a hearing on an order to show cause why a temporary restraining order should not be continued, where the statute or rule provided that a request for substitution of judge must be filed on or before a specified time after the case is noticed for trial, or, (2) where that issue was not reached, but have, nevertheless, upheld the denial of a request for change of judge as being untimely "if filed after the hearing of contested preliminary matters."

The Wisconsin Supreme Court in *Pure Milk Products Cooperative et al. v. The National Farmers Organization et al.,* 64 Wisc.2d 241, 219 N.W.2d 564 (1974) reached this result where the defendant-appellants participated in an evidentiary hearing on the order to show cause why a temporary restraining order should not be granted and after the trial court's order granting the temporary injunction was entered, filed an application for a substitution of judge.[9] This decision was reached on the grounds that "the legislature could not have intended by the wording of Sec. 261.08 Stats., to allow a change after the hearing of a contested motion which implicates the merits of the action." The court also stated, 219 N.W.2d l.c. 569[3]: "The right to substitution of a judge can also be waived by participating in the trial of the action after a petition has been filed. That right can also be waived by participation in preliminary motions in which the judge is allowed to receive evidence which of necessity is used and weighed in deciding ultimate issues * * *."

Other cases holding that once a trial judge has been permitted to rule on preliminary contested matters, or where the proceedings constitute nothing more than a continuation of the original proceedings, a request for change of judge is untimely are: *McClenny v. Superior Court of Los Angeles County,* 60 Cal.2d 677, 36 Cal.Rptr. 459, 461, 388 P.2d 691, 693[2] (1964); *Honolulu Roofing Co. v. Felix,* 49 Haw. 578, 616, 426 P.2d 298, 322[39] (1967); *People v. Saviano,* 10

9. The Wisconsin statute, § 261.08(1) provided: "Any party to a civil action or proceeding may file a written request with the clerk of the courts for a substitution of a new judge for the judge assigned to the trial of the case. The written request shall be filed on or before the first day of the term of court at which the case is triable or within 10 days after the case is noticed for trial."

Ill.App.3d 666, 294 N.E.2d 740[1] (1973); *State ex rel. Shufeldt v. Armijo,* 39 N.M. 502, 506, 50 P.2d 852, 855[1] (1935).

Only one of these cases, however, involved an injunction proceeding,[10] and that was *State ex rel. Shufeldt v. Armijo,* where the New Mexico statute, Laws 1933, c. 184, Section 2 provided that the affidavit of disqualification "shall be filed not less than ten (10) days before the beginning of the term of court, *if said case is at issue.*" (Emphasis our own). Petitioner, in this prohibition proceeding contended that it was the intention of the Legislature that a case be "at issue" before the affidavit for disqualification was filed, and a case was not "at issue" until an appearance, all pleadings, motions, etc. which were necessary to bring a case to issue shall have been submitted; and therefore his affidavit was timely. Responding to this argument, the court said, 50 P.2d l.c. 855[1]:

"... we believe under chapter 184, a litigant cannot experiment with the judge presiding over the case, and, upon encountering an adverse ruling, conclude to file his affidavit of prejudice. The affidavit must be directed at the judge 'before whom the action or proceeding is to be tried or heard.' Section 1. A hearing is contemplated. Whether such hearing be on a motion, demurrer, plea, or answer is immaterial. It is a hearing on an 'issue.' In a broad sense, a hearing includes every step therein where the judge is called upon to rule for or against any party to the cause. It is the judicial examination of the 'issue' in the broad sense that is contemplated by chapter 184."

The court held that an affidavit of prejudice is timely made if filed and called to the attention of the court before it has made any ruling on any litigated or contested matter whatsoever in the case, either on a motion, demurrer or plea of the party making the affidavit, or on the motion, demurrer, or plea of any other party to the action, of the hearing of which the party making the affidavit has been given notice, otherwise it is not timely made.

This holding of the New Mexico Supreme Court was followed in *Arizona Conference Corp. of Seventh Day Adventists v. Barry,* 72 Ariz. 74, 231 P.2d 426[1] (1951), which involved a request for change of judge based on an affidavit of bias and prejudice filed after the trial judge had heard evidence on an order to show cause for a temporary injunction and denied the temporary injunction. It was after this ruling that the plaintiff in the trial court filed its affidavit to disqualify the trial judge and said request was granted. However, before a new judge was selected, the defendant filed an action to prevent the respondent judge from assigning the case. Under Arizona law, Section 21–107, A.C.A.1939, when an affidavit of bias and prejudice is filed against a judge he had to assign the case to another judge. The court held, nevertheless, that since a hearing was had and a ruling made on a litigated and contested matter the motion for change of judge was not timely filed and ordered the respondent trial judge to proceed with the case.

However, this same court, in *Marsin v. Udall,* 78 Ariz. 309, 279 P.2d 721 (1955), held that to the extent that *Arizona Conference Corporation* was authority for the proposition that a party permitting a judge to pass upon any litigated or contested matter whatever, either on motion or plea, waives his right to disqualify the judge was expressly disapproved. 279 P.2d l.c. 724. The court did say, nevertheless, that it was committed to the rule that if a judge is allowed to receive evidence *which of necessity is to be used and weighed in deciding the ulti-*

---

**10.** McClenny involved a contempt proceeding arising out of the petitioners violations of a court decree in a domestic relations proceeding; Honolulu Roofing Company involved the filing of a request for change of judge after defendant's cross-claim had been dismissed; Saviano, a theft prosecution, where defendant did not move for change of judge until after he'd waived a jury, witnesses had been sworn, facts had been stipulated to, and the trial judge had denied his request to subpoena the mother of a missing witness to establish her whereabouts.

*mate issues,* it is too late to disqualify him on the ground of bias and prejudice.

The Arizona Court of Appeals in *State v. Neil,* 4 Ariz.App. 258, 419 P.2d 388 (1966) had occasion to consider the holding of *Marsin v. Udall* in a retrial of a criminal prosecution for forgery following reversal of the prior conviction of the appellant on two counts of forgery. Neil sought to disqualify the judge who had presided at the first trial under the Arizona rule—17 A.R.S., Arizona Rules of Criminal Procedure, Rule 196. According to *Neil, Marsin* "adopted the rule that the affidavit is untimely ' * * * if a judge is allowed to receive evidence which of necessity is to be used and weighed in deciding the ultimate issues * * * '," and " * * * where the trial judge had heard evidence in his official judicial capacity in the same 'action,' which evidence would be substantially material to the subsequent trial or hearing as to which his disqualification is sought." 419 P.2d l.c. 390. The Court of Appeals held that there has been a waiver of the peremptory challenge once the case has been tried to the particular judge and that disqualification thereafter can only be upon a showing of reasonable grounds to believe actual bias, and affirmed the judgment of the trial court.

In practically every case where the applicant has been denied a peremptory change of judge it is apparent that the appellate court, decided that the applicant was "judge shopping" after he'd received, or been advised that he was about to receive, an unfavorable ruling.

We have found no Missouri cases deciding whether evidence received in a hearing on an order to show cause why a temporary injunction should not issue may be considered by the trial court in a hearing on the merits on whether the injunction should be made permanent. However, because the function of the hearing on the order to show cause is to maintain the status quo, is summary in nature, and is not constrained by the rules of evidence, we have serious doubts that prior to the effective date of Rule 92 the trial courts of Missouri could consider evidence adduced on the show cause order in the trial on the merits unless the parties so stipulated or said evidence was made part of the trial on the merits. It has been said in 43 Am.Jr.2d, Injunction, § 287, p. 1084: " * * *, neither the affidavits, nor the finding of fact and other proceedings of the judge who heard the application for the interlocutory injunction are proper matter for consideration at the final hearing, unless the parties stipulate that the affidavits filed shall be treated as depositions and that the hearing on the preliminary injunction shall be considered the final hearing."

Other jurisdictions have adopted the rule of 42 Am.Jur.2d, Injunctions, § 287, p. 1084. *State v. Neil,* 419 P.2d at 390[2]. The Court of Appeals of Kentucky in *Markendorf v. Friedman,* 280 Ky. 484, 133 S.W.2d 516, 519[1] (1939) held that affidavits of two physicians and a registered pharmacist in support of the plaintiff's suit to enjoin the Board of Pharmacy from interfering with plaintiff's sale of merchandise and refusing to issue to him a license to sell said merchandise, although competent on the hearing on whether the temporary injunction should issue, could not be considered on a final trial of the case.

In *Lackey et al. v. Sacoolas,* et al., 411 Pa. 235, 191 A.2d 395 (1963) the court, in a suit seeking to restrain a swimming pool operator from violation of a civil rights statute, upheld the right of the Chancellor to consider the testimony presented at the preliminary hearing at the final hearing on the permanent injunction. However, a stenographic transcript of the testimony taken at the preliminary hearing was incorporated into the record as part of the evidence to be considered by the court in the hearing on the merits, and the trial judge informed the defendants that they could call for cross-examination of the witnesses who had testified at the preliminary hearing and were then physically present in the courtroom. The Pennsylvania court said, l.c. 398: "Neither case law nor reason can support the proposition that testimony taken at a preliminary hearing may not be *considered* by

the court at the final hearing, especially when the adverse party is allowed full opportunity to present additional direct testimony and to subject the witnesses of the preliminary hearing to cross-examination."

As a review of these cases demonstrates, there is a split of authority on this issue. However, prior to the effective date of the new Rule 92, it certainly was not clear that evidence presented on the order to show cause hearing, in the absence of consolidation, or by stipulation of the parties, would be admissible upon the trial on the merits, would become a part of the record, and need not be repeated upon the trial on the merits. Practicing attorneys approached the show cause hearing in the context of the three phases of the injunctive proceedings, i.e. its function, as the second phase of the proceedings was, for the sole purpose of maintaining the status quo. In depth evidentiary hearings were the exception, not the rule. Many times temporary injunctions were agreed upon by stipulation of the parties and the order of the trial judge conformed to the stipulation.

Here an evidentiary hearing was held, and the two witnesses tendered by the plaintiffs were cross-examined to some extent. A single defendant testified. However, at the time of the hearing on the order to show cause, there were some seven (7) defendants who had not as yet been served and who had not entered their appearance, and no appointment of guardian ad litem had been made for two minor defendants.

Although the organization allegedly known as "People Expressing A Concern for Everyone" had not been served, a "conditional" order finding that it was an appropriate defendant pursuant to the authority of Rule 52.08(b)(1) and (2) was entered continuing to enjoin it under the same terms as the individual defendants.[11]

No effort was made to introduce into evidence at the trial on the merits any evidence from the hearing on the order to show cause, nor is there any indication from the trial judge that he considered the evidence at the hearing on the order to show cause nor weighed it in deciding whether the temporary injunction should be made permanent. We believe this distinguishes the present case from *State ex rel. Shufeldt v. Armijo* and its progeny.

For a history of the statutes providing for disqualification of judge in Missouri one should see *Hontz v. State,* 574 S.W.2d 522, 523 (Mo.App.1978). The court stated, l.c. 525:

"The steady course of development of the law with respect to the disqualification of judge assigned to the case has continued along two courses: first, to make technical requirements for such applications less narrow and restrictive, and second, to include requirements with respect to timeliness and dispatch by providing for time limits within which such motions can be filed."

The present rule governing change of judge became effective September 1, 1975, and represents a substantial departure from the older rules. Formerly a change of judge could be obtained only for the causes enumerated in the former Rule 51.03. The application for change was required to set forth the cause for disqualification and the date when the applicant first obtained knowledge of the cause, an affidavit as to the truth of the application, and, a statement that the affiant had just cause to believe he could not obtain a fair trial and that the request was not for the purpose of delay. Former Rule 51.06(a). The application was required to be filed within 5 days after knowledge of existence of the cause for disqualification became known and no later than 5 days "before the date set for trial on the merits."

Under the Rule in effect at all times relevant to this case it is no longer necessary that the party seeking a change of judge allege or prove any cause for said

---

11. It is to be noted that the judgment of the court making the temporary injunction permanent made no finding with respect to a class action and did not even mention the PEACE organization.

change. The application need only state, "_____ requests a change of judge,"[12] and upon presentation of a timely application the judge is required to promptly sustain the application and obtain another judge to try the case. There is no basis for the judge with whom the application is filed to inquire into the motive behind the filing of the application. As stated hereinabove, the only issue open for inquiry is the timeliness of the application. *Natural Bridge Development Co. v. St. Louis County Water Co.,* 563 S.W.2d at p. 525[2].

Unless we are willing to hold that the granting of a temporary injunction after an evidentiary hearing on a show cause hearing is an indication to the defendant in an injunction proceeding that the trial court has already decided that a permanent injunction will automatically follow, then those cases like *Jenkins v. Andrews,* where the application for change of judge was not filed until after the trial judge informed the applicant that he could expect an adverse ruling, are inapposite. We cannot make the assumption that the granting of the temporary injunction is an indication to the parties that a permanent injunction will follow; to reach such a conclusion obfuscates the function of the hearing on the order to show cause.

 It is clear in our mind that the adoption of the new Rule 55.01 in 1975 was to liberalize the grounds for the granting of one change of judge to litigants without inquiring into the reason why the applicant sought disqualification of the judge. We also believe that the Supreme Court in em-

ploying the term "trial" in Rule 51.05(b) intended "trial on the merits" and did not intend to encompass in that term a show cause hearing on whether a temporary injunction should be granted.[13] If the application for change of judge had to be filed prior to hearings on pre-trial motions, it would have been appropriate for the Rule to have so provided.[14]

 We hold therefore that the trial court erred in denying Ms. Volk's request for change of judge.

 Respondent's argument that Ms. Volk's application for change of judge was made only for her benefit and not for her co-defendants is of no consequence. Rule 51.05(d) limits defendants to one change of judge and any change granted any one or more members of a class exhausts the right of all members of the class to a change, *State ex rel. Smith v. Journey,* 533 S.W.2d 589, 591[2] (Mo. banc 1976). The judge, where the application is timely filed, is disqualified from the *case* regardless of whether other members of the class desire the disqualification of the judge.

Respondent's argument that disqualification of the judge at this juncture would nullify approximately one-half of the total trial record is not persuasive because, as we have said, the evidence referred to was that taken on the show cause order and should not have, under the circumstances of this case, been considered by the trial judge in deciding whether a permanent injunction should be granted.

12. Committee Note—1973.

13. Our holding in this case has not considered, nor does it imply what would be the holding if Rule 92.02(a)(2) had been in effect at the time the show cause hearing was conducted and the trial judge had ordered the hearing on the merits consolidated.

14. For those interested in a rule so providing, see Wyoming Rules Civil Procedure, Rule 40.-1(b)(1) which requires that the motion for disqualification be filed "at least fifteen (15) days before the date set for the hearing on any motion filed pursuant to Rule 12, 42, 56, 65, 71.1, or 72.1, or if there be no such motion hearing set, then at least fifteen (15) days be-

fore the date set for pretrial, and if there be no pretrial set, then at least fifteen (15) days before the date set for trial, or if the date is set within fifteen (15) days after the order of setting, within five (5) days after receipt of such order; . . ." Rule 12 deals with Defenses and objections; when and how presented; by pleading or motion; motion for judgment on pleadings; Rule 42 with Consolidation; separate trials; Rule 56, with Summary Judgment; Rule 65, with Injunction; Rule 71.1 with Condemnation of property; and Rule 72.1 with judicial review of administrative action. Rule 65 of the Wyoming Rules is identical with our new Rule 92.

Judgment reversed; cause remanded with directions to the court to set aside its order denying Ms. Volk's request for disqualification, to sustain said request, and to assign the cause to another Circuit Judge for a new trial on the merits.

PUDLOWSKI, P.J., and SMITH, J., concur.