REPRODUCTIVE HEALTH SERVICES,
et al., Plaintiffs-Respondents,

v.

Samuel H. LEE, et al.,
Defendants-Appellants.

No. 50635.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 24, 1986.

Andrew Puzder, St. Louis, for defendants-appellants.

Frank Susman, Clayton, for plaintiffs-respondents.

PER CURIAM:

Defendants Samuel Lee and Joan Andrews appeal from the trial court's order permanently enjoining them from trespassing on plaintiffs' premises. We affirm.

Plaintiff Reproductive Health Services is a non-profit Missouri corporation which provides medical abortion services and pregnancy counseling, operating clinics at 100 N. Euclid in the City of St. Louis (hereinafter East Clinic) and at 13975 Manchester Road in St. Louis County (West Clinic). The East Clinic is located on the second floor of the Doctors Building, which it leases from plaintiffs Werner and Gerda Kugler, the owners of the building. The East Clinic has been operating in that location since April 1973; and the West Clinic was opened in June 1983. Mr. Lee and Ms. Andrews are individuals opposed to abortion.

The origins of the present dispute can be traced to demonstrations and sit-ins at the East Clinic involving defendants and others in 1979 and 1980. Vivian Meyer, the clinic administrator during that period of time, testified by deposition that Mr. Lee was among a group that entered the East Clinic on July 5, 1979, sat down on the floor in the waiting room, and refused to leave. The protesters had to be carried off the premises by police officers. She further testified that Mr. Lee was a participant in similar incidents on September 15, 1979, and on December 8, 1979. Ms. Andrews was involved in the December 8 sit-in, as well as similar protests on April 5, 1980, and May 15, 1980.

After these incidents, plaintiffs filed a petition for injunctive relief against thirteen named defendants, including Lee and Andrews. A temporary restraining order was entered on May 21, 1980; and, after an evidentiary hearing on a show cause order, a preliminary injunction was issued on June 27, 1980. After a trial on the merits, the court granted the requested permanent injunction.

On appeal of that judgment, we reversed and remanded because of the trial court's denial of one defendant's motion to disqual-ify the judge. *Reproductive Health Services, Inc. v. Lee,* 660 S.W.2d 330 (Mo.App. 1983). On March 15, 1985, plaintiffs filed a first amended petition, which contained allegations of additional trespasses subsequent to this court's 1983 opinion, and sought injunctive relief with respect to the West Clinic as well as the East.

At trial the deposition of Vivian Meyer, containing the previously discussed testimony, was admitted into evidence. In addition, plaintiffs adduced testimony from Judith Widdicomb, the Executive Director of Reproductive Health Services, and Gerda Kugler.

Ms. Widdicomb testified that on October 27, 1983, Ms. Andrews went to the East Clinic, sat down in front of the door leading into the medical area and refused to leave. She had to be physically removed from the premises by police officers. On January 5, 1985, Mr. Lee and a group of people forced their way into the East Clinic waiting room and refused to leave until carried off the premises by the police. Another incident occurred at the East Clinic on February 22, 1985, when Ms. Andrews crawled through a small window above the receptionist's desk into the "medical area," which is normally kept locked and is "only for patients." Once again she refused to leave and police officers were summoned. Ms. Andrews repeated this performance at the West Clinic on the following day, again crawling through a window into the medical area. On March 15, 1985, at the East Clinic, Sam Lee and "a large group of people ... came into the clinic, positioned themselves in the corridor in front of all of the doors leading to the suite and refused to leave."

Ms. Widdicomb further testified that Mr. Lee told her that he was a member of People Expressing A Concern for Everyone (P.E.A.C.E.), and that P.E.A.C.E. was conducting sit-ins at the abortion clinics. She also stated that Mr. Lee participated in sit-ins with John Ryan, a member of the Direct ProLife Action League, and that she had "observed [them] together at different demonstrations around both clinics." She

testified that between January 1, 1985, and the trial on May 20, 1985, there were nine incidents; six at the East Clinic and three at the West. She further testified as to the disruptive impact of these protests on the normal procedures of the clinics.

Ms. Kugler, one of the plaintiffs in this action, testified that she and her husband, through their West Pines Partnership, own the Doctors Building, and that Reproductive Health Services leases the second floor of that building. She stated that she had received numerous complaints from other tenants, and had been forced to implement additional security measures. In addition, she noted that demonstrators have "done a lot of damage to my building." She further testified that the demonstrations are "... blocking my driveway ... people cannot drive into the parking lot," and that they are "on my parking lot and my sidewalk to the parking lot. They are pushing their way into the building."

The defendants adduced no evidence at trial, and did not testify. The trial court entered judgment in favor of ten of the named defendants. However, it entered judgment against Lee and Andrews, and ordered

Defendants SAMUEL H. LEE and JOAN ELIZABETH ANDREWS, their agents and any person in active concert or participation with said Defendants or acting with similar intent or motive to disrupt the normal business activities of Plaintiffs and who receive actual notice of this JUDGMENT, ORDER AND PERMANENT INJUNCTION by personal service or otherwise, are enjoined and restrained from engaging in any activities which constitute coming upon or a trespass upon Plaintiffs' premises, those premises being The Doctors Building (including but not limited to the second floor), its lawns and parking lot, at 100 North Euclid Avenue in the City of St. Louis, Missouri, and the offices of Plaintiff REPRODUCTIVE HEALTH SERVICES, located at Suite 11, 13975 Manchester Road in the County of St. Louis, Missouri, or from barricading, blockading or interfering with ingress to, egress from or movement within any of the aforesaid premises.

Defendants Lee and Andrews first contend on appeal that the trial court erred in issuing the permanent injunction because "plaintiffs failed to demonstrate the frequent repetition of trespass required to justify the issuance of an injunction to restrain trespass."

We consider this point in light of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and will reverse the judgment of the trial court only if it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* at 32.

 It has been held that where a trespass is recurring and would involve a multiplicity of suits an injunction will lie to restrain it. *Reproductive Health Services*, 660 S.W.2d at 335. In such a case there is no adequate remedy at law, and plaintiff need not show irreparable harm. *Kugler v. Ryan*, 682 S.W.2d 47,50 (Mo.App.1984). Furthermore, the threat of future trespasses may be inferred from "the frequency *and pattern* of defendant's entry upon plaintiffs' property." (emphasis ours). *Id.*

 In the case at bar, the court could reasonably infer from the evidence that the defendants were likely to engage in future trespasses on plaintiffs' premises. Defendants seek to focus the inquiry on a narrow numerical analysis, and argue that given the five year time span over which the events occurred, their trespasses were not "frequent." However, in doing so they ignore crucial factors in this case. During much of the period in question an injunction was in effect. Prior to the trial court's injunction in 1980, and subsequent to this court's reversal of that judgment in September 1983, defendants' trespasses were relatively frequent and recurring. Furthermore, defendants' analysis ignores the pattern and character of their acts, which were willful and deliberate infringements upon plaintiffs' rights. Indeed, the recent trespasses into the medical procedure area

of the clinics indicate an escalation of defendants' unlawful activity.

Although reversing on other grounds, we held in our prior decision in this case that:

the trial court, under the facts, did not abuse its discretion and the granting of the permanent injunction was supported by substantial evidence, was not against the weight of the evidence, and applied the law correctly.

660 S.W.2d at 335. The trial court here had additional evidence regarding trespasses in 1983 and 1985, and we find that its judgment was also supported by the evidence.

■ In a related point, defendants argue that:

The trial court's findings in support of the issuance of its injunction were against the weight of the evidence to the extent the trial court found that: (1) there were persons acting in concert with defendants; (2) defendants trespassed on plaintiffs' lawn; and, (3) defendants trespassed on plaintiffs' parking lot, because there was no evidence that defendants acted in concert with anyone or trespassed on plaintiffs' lawn or parking lot. To the extent the trial court relied on such findings in issuing its injunction, the judgment below should be reversed. The trial court further erred in enjoining defendant Lee from returning to the West Clinic because there was no evidence that defendant Lee had ever been to the West Clinic.

We do not agree. Mrs. Kugler's testimony indicated that the demonstrations involved not only the clinic, but the parking lot and grounds as well. Although she did not specifically identify the demonstrators, in light of the evidence indicating defendants' affiliation with each other and individuals opposed to abortion it is reasonable to infer that there was a likelihood that they would engage in such demonstrations unless enjoined. Defendants' argument that they did not act in concert with others taxes our credulity. Apparently, they would have us believe that their arrival at the same time, at the same location, and

for the same purpose as other demonstrators was simply fortuitous. As to Mr. Lee's connection with incidents at the West Clinic, Ms. Widdicomb testified that he and Mr. Ryan participated in demonstrations at both clinics; and he was involved in other demonstrations with Ms. Andrews, a participant in West Clinic sit-ins. Defendants' argument takes an overly narrow view of the evidence, and ignores the reasonable inferences to be drawn from the evidence as a whole.

■ Finally we note, in regard to the scope of the injunction as it applies to defendants, that:

The issuance of injunctive relief and the terms and provisions thereof are, in a proper case, matters resting within the sound discretion of the trial court and said court is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances and equities of the case before it.

*Reproductive Health Services*, 660 S.W.2d at 335. Accepting, for the sake of argument, that Mr. Lee is correct in asserting that there was no evidence of his involvement with protests at the West Clinic, the trial court's order still falls within the scope of its "broad discretionary power to shape and fashion" appropriate relief under the circumstances of this case. Mr. Lee's participation in demonstrations at the East Clinic warranted the court's enjoining him from similar conduct at the West Clinic. We do not believe that the trial court abused its discretion here.

■ Defendant's final point is that "the injunction issued below is impermissibly broad in scope because, on its face, it purports to enjoin individuals in addition to those permitted by [Rule] 92.02(d)." We do not believe defendants have standing to raise this point on behalf of others. As previously discussed, the injunction is proper as to defendants, and as parties to the action they cannot contend that the court was without power to enjoin them.

Judgment affirmed.